[No. 12105.  Department One. — July 12, 1887.]

WILLIAM GREGORY ET AL., APPELLANTS, v. W. C. PERSHBAKER, RESPONDENT, AND MAGALIA GOLD MINING COMPANY, INTERVENOR AND RESPONDENT.

MINING — LODE AND PLACER DEFINED. — A mineral lode, as that term is used by miners, and in the mining acts of Congress, is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock, but does not include a deposit of gold-bearing gravel, although the same lies between clearly defined strata of rock, and has an average drop of several degrees. Such a deposit of gravel is a placer, as that term is used by miners and in section 3229 of the United States Revised Statutes.

ID. — LOCATION OF PLACER — DISCOVERY OF MINERAL. — The location of a placer mining claim is valid, notwithstanding no valuable mineral had been actually discovered in the land before the location was made.

ID. — CONFLICTING LOCATIONS — PRIORITY HOW DETERMINED — LOCAL REGULATIONS — MARKING BOUNDARIES — POSTING AND RECORDING NOTICE. — Where the local regulations of a mining district require that the boundaries of a mining claim shall be marked on the ground, and the notice of its location posted, before it is recorded, priority as to the right of possession under conflicting locations is determined in accordance with the priority of marking the boundaries and posting the notices of the respective locations; and a location having the priority as to such acts will prevail over another location, although the notice of the latter was recorded prior to the marking of the boundaries and the posting of the notice of the former.

APPEAL from a judgment of the Superior Court of Butte County.

The action was brought to determine the right of possession to certain placer mining ground situated in Butte County, California, known as the south three fourths of the southwest quarter of section 13, in township 23 north, range 3 east, Mount Diablo base and meridian. The plaintiffs and the defendant each claim to be entitled to the possession under respective placer locations, each of which embraced the land in controversy. The location under which the plaintiffs claim designated the ground included therein as the Lucretia Placer Mine, while that of the defendant designated it as the Howard Placer Mine. On the 22d of December, 1882, the defendant made application in the United States land-office for a patent for the land included within the Howard claim. Within due time thereafter, the plaintiffs filed their application in the same land-office for a patent for the land included within the Lucretia claim, and protested against and contested the defendant's application to the extent that the Howard claim conflicted with the Lucretia. Within thirty days after filing their adverse claim in the land-office, the plaintiffs commenced the present action, as required by sections 2325 and 2326 of the United States Revised Stat-

utes, to determine the right of possession. Prior to the commencement of the action, the defendant conveyed all his right, title, and interest in the Howard claim to the intervenor, the Magalia Gold Mining Company. The action was tried by the court without a jury, and upon the trial the court found that neither of the parties was entitled to the possession, and rendered judgment dismissing the action. From this judgment, the plaintiffs appeal. The further facts are stated in the opinion of the court.

*A. L. Hart, William Singer, Jr.,* and *H. V. Reardan,* for Appellants.

*Hundley & Gale,* for Respondent Pershbaker.

*W. C. Belcher,* for Intervenor and Respondent.

*W. H. H. Hart,* for Respondents.

McKINSTRY, J.—1. It is contended by the defendant and the intervenor (respondents) that the mineral, if any, found in the land claimed by the plaintiffs herein constitutes a "lode" within the meaning of the acts of Congress; that ledges or lodes can be located only in a manner entirely different from the mode adopted by plaintiffs' predecessors; and therefore, however regular their surface location might have been as a location of a "placer claim," it is invalid, because no placer exists within its limits.

Finding No. 51 of the court below is as follows:—

"That in the year 1856 John Barrett, and others associated with him, discovered on the westerly bank of Little Butte Creek, on the southeast quarter of said section 13, a thin seam of gravel cropping out between an underlying bed of slate-rock and an overlying bed of lava-rock, and finding that the said seam of gravel was gold-bearing, located the same as and for a mining claim, under the name and designation of the Burch

and Barrett Claim, and thereupon commenced to work and develop their said claim by excavating a tunnel into the hill, following the course of the channel, and the said channel became thicker and better developed and more valuable as they pursued and explored the same into the hill, and showed that the said deposit was a well-developed channel, varying from a few inches to eight and ten feet in thickness, and from eight or ten to forty feet in breadth, with a well-defined bed and side walls of slate-rock, and capped by a thin stratum of clay, with an overlying body of lava-rock for hanging wall. Prior to the year 1879, the said John Barrett, by mesne conveyances from his associates in said location, became sole owner of the said Burch and Barrett location, and in that year sold and conveyed the same to the intervenor, the Magalia Gold Mining Company, a corporation duly formed and organized under the laws of the state of California, and the said intervenor thereupon entered into and took, and thence hitherto has kept and held, and still holds, the possession, and has ever since continued the work of exploring and pursuing and working and mining the said gravel deposit in and along the said channel or bed, and had, in the spring of the year 1882, pursued, and opened, and worked the said gravel channel or bed in said southeast quarter of said section 13, and in the direction of the said southwest quarter of said section, and had discovered that the said gold-bearing channel extended towards and probably into the said southwest quarter, and that the said southeast quarter of section 13 contained deposits of gold-bearing gravel in quantity sufficient, not only to pay for working and mining the same, but sufficient to render the said quarter-section of great value for mining purposes; that after the commencement of this action, the said Magalia Gold Mining Company projected and extended its tunnel mentioned in these findings into said southwest quarter of said section 13, following the said gold-bearing deposit

or channel; that said channel in its course int the hill descends or drops at an angle on an average o ut eight degrees; that the bed-rock of said channel du its entire length, so far as worked, is composed of a slate formation, and upon that slate formation said gravel rests, and over said gravel is a formation of clay gouge overlapping said mineral deposit, and that above said clay seam is the lava which extends to the surface, and that the overlying lava-rock at the point where the said channel crosses the easterly line of the said southwest quarter aforesaid is about six hundred feet in thickness; that said gravel is of a hard nature, and in mining and extracting the same has to be detached from its position by the use of picks and gads, and when extracted is taken out to the surface and there washed, and in so washing gold is extracted therefrom; that neither gold nor any other mineral was discovered within the boundaries of said southwest quarter of said section 13 until the said tunnel of said Magalia company penetrated therein, as aforesaid; that said pay-streak of gravel and deposit does not crop out at any other place or places than the place where the same was discovered, as aforesaid; and that the same cannot be seen or reached without entering the works of the said Magalia Gold Mining Company, and following the trend and meanderings of said channel to the present face of the mineral deposit, except by sinking a shaft or running expensive tunnels other than those run, occupied, and used by the intervenor therein."

In support of their view, counsel cite the *Eureka Case,* 4 Saw. 302, and other decisions following and referring to that. In the *Eureka Case,* Mr. Justice Field of the Supreme Court of the United States said: "We are of opinion that the term [lode] as used in the acts of Congress is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock. It includes, to use the language

cited　　counsel, 'all deposits of mineral matter found
th　　　h a mineralized zone or belt, coming from the
　　　e source, impressed with the same forms, and ap-
pearing to have been created by the same processes.'"

This definition would not include a bed of gravel from which particles of gold may be washed. The words "mineralized rock" were evidently intended to qualify the last as well as the first sentence. That which in the *Eureka Case* was declared to be a "lode" was a zone of *limestone*, lying between a wall of quartz and a seam of clay or shale, the one having a dip of 45° and the other of 80°.

Section 2320 of the Revised Statutes of the United States, 1873–74, treats of "mining claims upon veins or lodes of quartz or other rock in place bearing gold"; section 2322, of veins, lodes, and ledges "the *top or apex* of which" lies inside of surface lines extended vertically downward.

In Soane's, Newman, and Baretti (by Valazquez), a "placer" is said to be "a place near the bank of a river where gold-dust is found." In the last edition of Webster, which gives the meaning of the term as approved by usage in Mexico and California, it is defined,—"a gravelly place where gold is found, especially by the side of a river, or in the bed of a mountain torrent." Whatever the origin of the subterranean channels containing gravel beds, they have long been known to exist in California, and they have been generally supposed to be, and generally spoken of, as the beds of ancient rivers in which the gravel was deposited by fluvial action, and which were either from their beginning subterranean, or upon which the superincumbent earth or rock has been hurled, by means of convulsion, caused by volcanic or other natural force. That the bed of gravel mentioned in the findings, to the limited extent it has been prospected by the intervenor's tunnel, "descends or drops on an average of about eight degrees," does not of itself

make the gravel deposit a lode with "a top or apex," nor contradict the theory that the channel was the channel of a mountain stream or torrent.

The terms employed in the acts of Congress are used in the sense in which they are received by miners. (*The Eureka Case, supra.*)   Moreover, by express enactment, "claims usually called placers" are declared to include all forms of deposit, "excepting veins of quartz or other rock in place."   (U. S. R. S., sec. 3229.)

Referring to the common use of the word by miners, to the dictionaries, and to the adjudications of courts, the gravel bed with gold therein, as described in the finding, is a placer.

Other findings of the court below strengthen this conviction.   The court found that, for a long time, the land which is the subject of this action was generally reputed and understood, throughout the mining district in which it is, to be valuable placer mining ground, through which ancient channels containing gravel bearing gold in paying quantities extended.   (No. 13.)   While it does not appear, except inferentially, that ground like that in controversy was generally located as placer, neither does it appear that there were district laws with respect to locations of veins, lodes, or ledges; and, on the other hand, the district laws, with reference to the location of flat and placer claims, are set out in the findings at length. It further appears that the intervenor attempted to locate the ground as and for a placer claim, and its application for a patent was based on that location.

2.   If the ground located by those under whom plaintiffs deraign was not previously located as a placer claim, and the plaintiffs or their predecessors fully complied with the acts of Congress, and the local rules and regulations, the plaintiffs would seem to have the right of possession.   There is no finding of any local law which provides for the location of placers, or beds of gravel containing precious metals below the surface, as tunnel

claims, or of facts showing that the grantors of the intervenor, who constructed the tunnel, pursued the mode laid down by local laws in locating it. As to any claim to the possession based on occupancy by the tunnel of a portion of plaintiffs' location, such occupancy, if it could be considered at all under the statutes, would extend only to the space within the walls of the tunnel, and could not be extended beyond them by any rule of constructive possession. We are not required, therefore, to interpret the section of the act of 1872, U. S. R. S., sec. 2344, which reads: "Nothing contained in this chapter shall be construed to impair, in any way, rights or interests in mining property acquired under existing laws," if, indeed, that provision refers to any rights other than those acquired under the act of 1866, and under the act of 1870, "granting to A. Sutro the right of way," etc.

The claim and location of plaintiffs "was distinctly marked on the ground, so that its boundaries could be readily traced." (R. S., sec. 2324.) The mining laws of the district provided: "A notice shall be posted in a conspicuous place on each claim or body of claims, describing the same with convenient certainty, and shall be recorded by the district recorder in his office, or in the office of the county recorder of Butte County." "All records of mining claims shall contain the name or names of the locators, and such a description of the claim or claims located, by reference to some natural object or permanent monument, as will identify them." The last requirement is substantially a transcript from the United States statute. (R. S., sec. 2324.)

The location by plaintiffs' predecessors in interest conformed strictly to the law with respect to the posting and registration of notices and their contents.

It is insisted by counsel for respondents that no location of mineral land is valid, unless valuable mineral had been actually discovered in the land before the location was made. As to placer claims, we find no such con-

dition in the acts of Congress, in the local laws, or in the practice of miners. But if the laws contemplated discovery before location, it would seem from finding 51, above quoted, that here the discovery preceded the location. Of course, a patent for mineral lands can only issue under the acts of Congress relating to the disposition of mineral lands, on proof that they are such.

3. It is contended that the intervenor had already located the same ground as a placer.

The intervenor's notice of location was *recorded* December 5, 1882.

The plaintiffs' claim was marked on the ground. The marking was commenced on the 13th and completed on the 14th of December, 1882.

Plaintiffs' notice was posted in a conspicuous place on their claim on the said 14th of December, and was recorded by the district recorder on the 16th and by the county recorder on the 20th of the same month.

On the said 14th of December, and after the boundaries of plaintiffs' claim were fully marked on the ground, the intervenor's notice of location (which described its claim by boundaries coterminous with plaintiffs' claim, and which had been so, as aforesaid, recorded on the fifth day of December) was posted on the claim. And on the said 14th of December the intervenor proceeded to mark its claim on the ground,—in such manner as that its boundaries could be readily traced,—by blazing trees and driving painted stakes along the same lines already marked by the plaintiffs.

If the rights of the parties hereto are to be determined by reference simply to what was done by them or their grantors on the surface and in the recording office, and without regard to work, if any, done in intervenor's tunnel within the limits of the claim, the plaintiffs would seem to have the better right. The facts that the intervenor recorded a notice containing a description of the claim by reference to government subdivisions, and

posted a copy thereof outside of the limits of the claim as described in the notice, were not of themselves such acts as that the subsequent marking of the boundaries related to the record or posting of the notice, so as to cut out any rights of plaintiffs, acquired by compliance with the statute and district laws. The local laws seem very clearly to provide that the designation of the boundaries on the ground and posting of the notice shall precede its record. In the land-office, where the question between the applicant for a patent and the United States is the right of the applicant to purchase, the order in which are done the several acts which give the right to purchase may be immaterial. And so in an action in the state court where only one of the parties claims to have complied with the laws, the order of the acts done by him may be immaterial. But in an action where both parties claim to have made locations, in themselves valid, and the question is, which of the two has made the *prior* location, the prior, actual, or constructive possession, evidenced by posting the notice and by marking the boundaries in the manner required by statute, must prevail; at least, unless there has been unreasonable delay in recording the notice, even if it be conceded that a failure to record the notice will invalidate a location otherwise regular. It cannot be said here that the plaintiffs unreasonably delayed the record.

The act of Congress does not in express terms require the posting or registration of a notice, but recognizes the power of the miners to require the registration by providing that all records of mining claims shall contain a certain description, etc.

The miners are warned that a tract of land is claimed by the posted notice and the evidence of its boundaries made necessary by the statute. They are not required to search the records in the first instance. A recorded notice gives no information of a claim not actually located. Nor does even a notice posted on the ground,

unless it appears that the party posting it is proceeding to indicate with reasonable diligence, or is about to indicate, the boundaries by marking them. .

It may be asked: Suppose work is being actually prosecuted on or in the ground, and a struggle ensues between the person doing the work and another party, each striving to secure a precedence in marking out the boundaries of a claim, to include the place where the work is being done, can the mere fact that he who has done nothing toward extracting ore or developing the ground first completes, or first commences, the marking of the boundaries, give to him the right of possession? In such case, would the performance of the only work done in the mine, the record of a notice defining the limits of a claim including the work, and the posting of the notice *near* the claim, as described in the record, go for naught?

Although merely working at a particular place or places gives no right to patent under the statutes of the United States, and would not, under the local law, proved herein, extend by construction the actual possession, yet as to a third person, who has not complied with the statutes and local laws, the person doing work, or who has done work not abandoned, has an actual possession to the extent of the work done.

We have said that, as between two persons,—neither of whom had done any work before his attempted location, and both of whom claim to have made valid locations,—the issue must be determined by reference to priority in the statutory designation, on the surface, of the limits of the claim. Of course, we are not to be understood as saying that a claim can be *held*, prior to the patent, without work subsequent to the formal location within it, in case no work was done before. That is not a question involved in this case. But, in determining the question of priority in the particular referred to, it may be possible that the person doing work in the

ground, and who has indicated by his acts his intention to perfect a location under the mining laws and statutes, should be held, by proper application of the doctrine of relation, to have first marked the boundaries of the claim (in legal effect) as against one who, for the purpose of depriving him of the benefit of his work, or of his discovery of mineral of value, shall intervene and mark the boundaries before the first occupant shall have completed or even commenced their alignment. But no such question is distinctly presented by the findings herein, and as we think the interests of justice demand a new trial of the action, we decline to express any opinion upon a suppositive case.

Judgment reversed, and cause remanded for a new trial.

TEMPLE, J., and PATERSON, J., concurred.

Hearing in Bank denied.