## DOE v. WATERLOO MIN. CO.

(Circuit Court of Appeals, Ninth Circuit. November 8, 1895.)

### No. 145.

1. MINING CLAIMS—LOCATION.

One N. discovered a mineral-bearing lode, and posted on the spot a notice claiming the right to locate 1,500 feet on the lode and 300 feet on each side thereof, naming it the "R. J. Lode," and also claiming the right to have 20 days in which to complete his boundary monuments. He afterwards went to the premises to mark the boundaries, but was prevented by sickness, but within 20 days he agreed with three other persons to give them half the claim if they would complete the location, which they did by setting up monuments at the corners and on the lines thereof, and posting a location notice, describing the same, in which the claim was called the "R. J. Gold, Silver, and Nickel Quartz Mining Claim." *Held,* that the location made by N.'s associates was a completion of the claim

made by N., notwithstanding the addition of descriptive terms to the name of the claim in the notice posted by them. Newbill v. Thurston, 4 Pac. 409, 65 Cal. 419, disapproved.

**2. SAME.**

Held, further, that the posting of the notice upon a single stake on the claim by N. was not a sufficient location of the claim and marking. of the boundaries thereof.

**8. SAME—TRANSFER OF RIGHTS.**

Held, further, that N. had a right to transfer by parol an interest in his right to locate his claim to his associates, and his doing so and permitting them to complete the location was not an abandonment of such right.

**4. SAME—REASONABLE TIME.**

Held, further, that the discoverer of a mineral vein should have a reasonable time after his discovery to complete his location, the length of time depending on the character of the ground, the means of marking it, and the ability to ascertain the course or strike of the vein, and that in this case 20 days was not an unreasonable time, the vein being situated on a rough mountain side, the dip not exposed, and 1,000 feet of the vein covered.

**5. SAME—TITLE OF CLAIMANT—ACT OF MARCH 3, 1881.**

The provision in the act of March 3, 1881 (1 Supp. Rev. St. p. 324), that if in any action brought pursuant to Rev. St. § 2326, title shall not be established in either party, a verdict shall be found accordingly, does not require that when title is established in one party the court shall determine such party's right to a patent, as against the United States.

**6. SAME—CITIZENSHIP OF STOCKHOLDERS OF CORPORATION.**

The citizenship of the stockholders of a corporation need not be proved, for the purpose of establishing its right to patent a mining claim, otherwise than by showing it to be organized under the laws of a state of which its stockholders are conclusively presumed to be citizens.

**7. PRACTICE ON APPEAL—ASSIGNMENT OF ERROR.**

An assignment of error stating that "there is error in said decree in this: that said court, upon the whole evidence, should have rendered a decree in favor of the complainant," is too general, and cannot be aided by an attempt to make the same more particular in the brief.

Appeal from the Circuit Court of the United States for the Southern District of California.

This was a suit commenced by John S. Doe against the Waterloo Mining Company, pursuant to Rev. St. §§ 2325, 2326, to determine the right of possession of mining lands for which conflicting applications for patents had been filed. A demurrer to the complaint was overruled (43 Fed. 219), and a decree was rendered for the defendant (55 Fed. 11). Complainant appeals. Affirmed.

P. Reddy, J. C. Campbell, and W. H. Metson, for appellant.

A. H. Ricketts, for appellee.

Before GILBERT, Circuit Judge, and KNOWLES and HAWLEY, District Judges.

KNOWLES, District Judge. The Waterloo Mining Company, on the 12th day of September, 1889, made an application at the United States land office at Los Angeles, Cal., for a patent for the Red Jacket quartz lode mining claim. John S. Doe, the appellant in this case, within 60 days thereafter,—the time allowed by law,—filed in said land office his adverse claim to the claim made in the application of said company, in which he, the said Doe, claimed to be the owner of a portion of the premises described in said application as the

"Red Jacket Lode Claim," and which portion he claimed to be the Mammoth lode claim. Within 30 days after filing his adverse claim said Doe commenced this action against said company in order to determine the right to the possession of that portion of the Red Jacket claim which is described as the "Mammoth Claim." The cause was commenced in the superior court of San Bernardino county, Cal., and on petition was removed from the same to the United States circuit court for the Southern district of California. The cause was tried in the last-named court, and judgment rendered for the said company. The plaintiff then appealed the cause to this court.

From the evidence it appears that on the 26th day of March, 1881, one P. H. Newbill made the discovery of a mineral-bearing vein or lode in what was called "Grapevine Mining District," San Bernardino county, Cal. On that day he posted a notice upon said premises known as the "Red Jacket" lode or claim, claiming the right to locate 1,500 feet on said lead and 300 feet on each side of the same, and also claiming the right to have 20 days from said date in which to complete his boundary monuments. Subsequent to the said 26th day of March he went to the said premises with the view of marking the boundaries of his claim, but owing to sickness was prevented from so doing. It also appears he had some doubts as to how he should locate his claim. On the 11th or 12th of April, following, he made an agreement with G. B. Wallace, H. C. Parks, and J. B. Farrell to the effect that if they would complete his location on said ground he would give them one-half of said claim. In accordance with said agreement, on one of said dates these parties did mark the boundaries of said Red Jacket claim by placing along the same, at the sides and ends thereof, some seven monuments of stone, about $2\frac{1}{2}$ feet high. They posted a notice on the center monument on the east end line, describing the same, and which was a location notice. On some of the other monuments notices were placed indicating the corners of the location. The said location notice names the claim as the "Red Jacket Gold, Silver, and Nickel Quartz Mining Claim." The name in the Newbill notice was the "Red Jacket Claim." On the 6th day of April, 1881, 6 days before Parks, Wallace, and Farrell marked the boundaries of their location, and some 11 or 12 days after Newbill had posted his notice on the same, T. C. Warden and Dr. G. W. Yager located what they called the "Mammoth Lode." This included a part of the Red Jacket lode claim. There is no contention but that the boundaries of both claims were properly marked.

The first contention is that the location of the Red Jacket gold, silver, and nickel mining claim is not a completion of the claim made by Newbill. The supreme court of California, upon the same evidence, in the case of Newbill v. Thurston, 65 Cal. 419, 4 Pac. 409, held that it was not. With the highest respect for that distinguished court, I cannot come to the same conclusion. Newbill undoubtedly made some kind of a mineral discovery on the ground located. He posted a notice on this ground claiming the right to locate some 1,500 feet on the same,—500 feet in one direction and 1,000 feet in

another from the point where he posted his notice. He went upon the ground after this with the view of marking the boundaries of his location, and was prevented by sickness. He made an agreement, for a valuable consideration, with Parks, Wallace, and Farrell, by which they were to complete his location. In pursuance of that agreement they did complete it. That was the contract and intention of all parties. The fact that a new location notice was posted by them on the ground, in which an addition of some descriptive terms was applied to the name given in the location notice of Newbill, cannot make it a new location. The ground was what was sought, not a name. There is no objection to changing the name of a location until after a record is made of the same. There can be no objection to changing the description in a location notice, so other ground is not embraced, up to the date the location notice becomes a record. From necessity such a fact would often occur in the location of mining ground. A location notice generally does describe the ground located, and not what it is proposed to locate. The notice of Newbill should have no other force than a notice of discovery. As a notice of discovery and intention to claim and locate the ground described therein, it was certainly sufficient. Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. 560; Marshall v. Manufacturing Co. (S. D.) 47 N. W. 293.

There is a considerable space in the brief of appellee devoted to maintaining that the notice and acts of Newbill were a sufficient location of the Red Jacket claim; that the one stake he placed upon the ground, claiming 500 feet one way and 1,000 feet in another way on the vein discovered, with 300 feet on each side of the same, was a sufficient marking of the boundaries thereof. In the location of quartz lodes, before the mineral act of 1872, such a mode of location was common. Since that date, I know of no instance in which such a location has been sustained. Since that date, it has generally been held that in some way the location should be made in the form of a parallelogram, and the location so marked that its boundaries can be readily traced. The cases of Golden Fleece, etc., Co. v. Cable Consol., etc., Co., 12 Nev. 312–330; Book v. Mining Co., 58 Fed. 106; Gleeson v. Mining Co., 13 Nev. 442–558; Holland v. Mining Co., 53 Cal. 149; Gelcich v. Moriarty, Id. 217,—maintain fully that such a location as is claimed for Newbill is insufficient. It is also claimed that the above-named cases decided by the supreme court of California were overruled by the same court in the case of Carter v. Bacigalupi, 83 Cal. 187, 23 Pac. 361. I do not think this should be asserted. The question presented in the last case was the sufficiency of a location notice under the local rules of the district, and not as the marking of the boundaries of a claim. Certainly it does not purport to overrule the former cases. Many cases might be cited from other states and territories showing that such a location is invalid.

Appellant claims that the Newbill right was abandoned because he allowed Parks, Wallace, and Farrell to become joint locators with him. There was no intention on his part to abandon his rights. Certainly the contrary appears in his contract with these parties. Abandonment rests, as a rule, in intention. Newbill, at the time

he made his contract with Parks, Wallace, and Farrell, had only the right to make a location of a claim on account of his discovery of a mineral-bearing vein containing gold. There was no rule of law that prevented his making a verbal transfer of this right. Until the statute of California provided otherwise, a mining claim could be transferred by parol or verbal conveyance accompanied by a change of possession of the premises. Tunnel Co. v. Stranahan, 20 Cal. 199; Mining Co. v. Taylor, 100 U. S. 37. The mere right, then, to locate a mining claim, could certainly be so conveyed in the absence of any statutory law. When such a transfer was made there was no objection to the parties making the purchase joining in the location.

The next point presented is, were the boundaries of the claim marked and the location completed within a reasonable time after the discovery by Newbill? In his testimony explaining the claim he made in his notice, of 20 days in which to complete his location, Newbill said:

"The reason was that I understood that it was a general understanding that we were allowed twenty days to complete our location. I was aiming to comply with the custom and law, and I thought having that twenty days was according to the custom and law. I was of the opinion that it was in the law, but as I saw in the— (Interrupting): Just give your reasons. A. My reason at that time was I thought it was embraced in the law. I knew it to be a custom,—law and custom together,—and would try to comply with them. The Court: Q. That is, you thought there was a law and custom allowing twenty days? A. Yes, sir. Q. Was that the custom in that section of the country?"

This, for some reason that does not fully appear, was never answered.

There was no objection to proving that there was a custom in the Grapevine mining district allowing a discoverer of a mineral-bearing vein 20 days after his discovery in which to fully complete his location of his claim. Section 2324, Rev. St., gives "the miners of each mining district" the right "to make regulations not in conflict with the laws of the United States or with the laws of the state or territory in which the district is situate governing the location of mining claims." Such a regulation may be evidenced by a written rule, or by an observed custom in the district, not in writing. Flaherty v. Gwinn, 12 Morr. Min. R. 605; Harvey v. Ryan, 4 Morr. Min. R. 490. Whether this evidence would warrant a court in finding that there was any custom in Grapevine mining district giving any time for the completion of the location of a mining claim after the discovery of a vein is doubtful. There is nothing in the evidence which confines the custom to that district, although given in connection with making a location in that district. The question which, if answered, would have made this point clear, for some reason, was not answered. The court found there was no such rule or custom. Under the evidence this court would not be warranted in reversing that finding. There is no doubt but the discoverer of a mineral vein should have a reasonable time after the discovery of his vein in which to complete his location embracing the same.

Upon the question of the reasonable size of a mining claim a gen-

eral custom may be shown, where there is no local rule defining the same. Tunnel Co. v. Stranahan, 9 Morr. Min. R. 457. Upon the same reasoning a court might consider a general custom as to the time given a miner after his discovery in which to make his location complete. Upon the reasonableness of the time claimed such evidence as recited above might be considered. Wherever there has been any legislation upon the subject the time given after the date of discovery in which to complete a mining location has exceeded 20 days. The statute in Colorado is 60 days, and the record thereof must be made within 30 days thereafter. Without consulting what has been considered by rules and regulations or statute law upon the subject as to the time within which after discovery the location of a mining claim should be completed, we would say that what would be a reasonable time for such completion would depend upon the circumstances affecting the ability of the locator to properly define his claim. The sickness of the locator which would prevent his performing the necessary work to accomplish this cannot be classed as such a circumstance. Jones v. Anderson, 82 Ala. 302, 2 South. 911; 19 Am. & Eng. Enc. Law, p. 1090. If sickness would excuse the performance of the necessary work in completing a location, for how long a time would it act as an excuse? If for any time, why not for a very long and indefinite time? I think the circumstances should be such as pertained to the ground to be located, its character, the means of properly marking the ground sought to be located, and the ability to properly ascertain the dimensions and course or strike of the vein on account of which the location is made. Courts that have been called upon to try mining cases have observed the haste with which such locations are made, and the want of the requisite care in so marking the boundaries of the locations concerning which disputes arise as to properly embrace the apex of the vein which is sought to be appropriated. Recurring to the evidence as to the character of the ground where this location was made, and as to the vein on account of which the location was made, and we find that the ground was upon a rough mountain side; that the vein was exposed about 400 feet in one place and about 40 in another. It does not appear that the dip of the vein was exposed at any point. There was a large amount of quartz upon the side of the mountain. One thousand feet of the vein was covered. Under these circumstances I think 20 days was a reasonable time to allow for the completion of the Newbill location. The fact that neither he nor his associates made any extended researches on the ground in order to fully show the course of the vein makes no difference. They may have been fortunate in marking their boundaries. In affording a reasonable time in which to complete a location, the object is to eliminate, as far as circumstances will permit, guesswork in the location of quartz lodes. The question is, what would be a reasonable time for a competent locator to have, under all the circumstances, in which to complete his location? And, as I have said, I think 20 days would not be unreasonable. When the Red Jacket claim was properly located, on the 12th of April, 1881, this location related back to the date of the discovery by Newbill, on the 26th of March pre-

ceding.    Gregory v. Pershbaker, 73 Cal. 120, 14 Pac. 401.    The location of the Red Jacket must be held, then, to be prior to that of the Mammoth.

It is urged that the notice posted by Newbill was not placed upon the vein located.    The evidence is that it was placed upon a part of the said vein,—a spur thereof.    It was not necessary that the notice should be placed upon the croppings of the vein.    If near by the same, it would be sufficient if it indicated the vein sought to be located.    Phillpotts v. Blasdel, 4 Morr. Min. R. 341.    Parks and his associates had no trouble in determining what was the vein Newbill sought to locate.

There are some nine assignments of error in the transcript.    In the brief seven additional assignments of error are made.    Appellee maintains that the court should not consider these additional assignments; that rule 11 of this court (47 Fed. vi.) [1] precludes the court from considering them, except on its own motion.    The contention of appellant is that these additional assignments are only specifications under the first assignment of error.    Rule 11 of this court requires that the assignments of error shall be separately and particularly set out.    The object of setting forth assignments of error is to apprise the opposite counsel and the court of the particular legal points relied upon for a reversal of the judgment of the trial court.    The attempt to make the assignments of error more particular in a brief is not proper.    It is in fact an attempt to amend the record in this particular without permission of court. The assignment of error in question reads as follows: "There is error in said decree, in this: that said court, upon the whole evidence, should have rendered a decree in favor of the complainant." This is too general.    There is no specification showing wherein the decree is not supported by the evidence.    It is not correct that the seven additional assignments of error are specifications under this assignment.    The tenth assignment of error—one of the additional seven—is, "There is error in the decree, in that the question whether or not the defendant was entitled to the right of possession as against the United States of America was not decided or determined thereby."

The thirteenth assignment of error is that the decree was erroneous because it does not appear in the pleadings, anywhere, that the stockholders of the Waterloo Mining Company, the defendant, were citizens of the United States.    The other additional assignments of error come under heads that have already been considered.    There is no doubt that the court may consider the question of jurisdiction, although not made the subject of an assignment of error.    It seems to be contended that it was necessary for the court to determine whether or not the appellee was entitled to a patent from the United States; that without such determination the object sought by the suit has not been obtained, and the land department properly instructed as to the rights of an applicant for a patent. If this is a correct view of the law, this point should be considered.

[1] 11 C. C. A. cii.

The statute which it is claimed requires of the court such a decree or judgment reads as follows:

"That if in any action brought pursuant to section twenty three hundred and twenty-six of the Revised Statutes title to the ground in controversy shall not be established by either party the jury shall so find and judgment shall be entered accordingly."

When a cause is tried by a court without a jury, undoubtedly the same duty falls upon it as upon a jury, under said statute. It will be seen that it is only when title to the ground shall not be established by either party that the verdict shall be against both. If one of the contending parties should establish title,—that is, the right to possession of the premises in dispute on account of a compliance with the mining laws of the United States and the laws of the state and the rules and customs of miners,—then there is no authority in the statute to find against the United States, and that the party so establishing title is entitled to a patent from the United States. The suit does not purport to be one against the United States. The United States is not named as a party. No authority is given by the statute to sue the United States in such a matter. The application for a patent for mineral land is made to the land department of the United States. Ultimately that department must determine the right to the patent. The trial of the right to possession of a given tract of mineral land is a proceeding in aid of that department. It was not intended that when this issue was presented to a court it should operate as a transfer of the whole case made by the application, and that thereafter the land department would have nothing to do but to carry into effect the judgment of the court. A state court of general jurisdiction has the power to determine this issue, and such courts are often called upon to try causes arising under the said section 2326. Can it be supposed that it was intended that under the said statute such a court would have the power to determine whether or not the United States should issue a patent to any applicants? The power to sue the United States in a state court should rest upon some positive statute. It cannot be inferred from such a statute as the one in question. For these reasons I do not think this assignment of error can be sustained.

The question presented in the thirteenth assignment of error affects the jurisdiction of the lower court and of this court. It does not appear in any of the pleadings or in the evidence that the stockholders of the Waterloo Mining Company were, all or any of them, citizens of the United States. The plaintiff would not be benefited by this omission if it were true that none of said stockholders were citizens. It is alleged in the answer that Newbill and his colocators were all citizens of the United States. This fact is stated in their location notice, and that is in evidence in this case. Newbill and Parks both testify to their citizenship. An affidavit of one Emil A. Sanger, in evidence, states that all of said locators were citizens of the United States. The grantees of these locators would be entitled to the possession of the premises located, as against plaintiff.

Manuel v. Wulff, 152 U. S. 505, 14 Sup. Ct. 651. The question might be considered as affecting the duty of the court to find against the defendant. In the case of McKinley v. Wheeler, 130 U. S. 630, 9 Sup. Ct. 638, the supreme court holds that a corporation all of whose stockholders are citizens of the United States had the power to locate a mining claim. The inference is, although not stated, that only corporations whose stockholders are citizens of the United States can locate such claims. Section 2325 of the Revised Statutes provides that persons who can locate mining claims may make an application to patent the same. The question would arise, how is this citizenship of stockholders to be established? It is alleged in the bill, and expressly admitted in the answer, that the appellee is a corporation organized and existing under the laws of Wisconsin. A certified copy of its articles of incorporation were introduced in evidence. Section 2321, Rev. St., provides:

"Proof of citizenship under this chapter may consist in the case of an individual of his own affidavit thereof, in the case of an association of persons unincorporated, of the affidavit of their authorized agent made of his own knowledge or upon information and belief, and in the case of a corporation organized under the laws of the United States or of any state or territory thereof by the filing of a certificate of incorporation."

The question might arise, why would the certificate of incorporation establish the citizenship of the stockholders? In considering the question of jurisdiction in the federal courts, it is an established rule that, when a corporation organized under state laws is a party, it is conclusively presumed that the stockholders thereof are all citizens of that state. Muller v. Dows, 94 U. S. 445. Congress was familiar with this rule, and it seems probable intended to establish a similar rule under the mineral land act of 1872. The practice in the United States land office has been, I think, universal, not to require of a corporation seeking to patent mining ground proof of the citizenship of its stockholders, other than by the production of a certified copy of articles of incorporation. After the passage of the act of March 3, 1887 (24 Stat. 477), which provided that no corporation, more than 20 per cent. of the stock of which was owned by persons not citizens of the United States, should acquire real estate in the territories of the United States or the District of Columbia, corporations making application to patent mining claims in a territory were required to show that 80 per cent. of their stockholders were citizens of the United States. But this rule never prevailed under the mineral act of 1872 anywhere. It would have been a great hardship on a corporation to have had to prove that all of its stockholders were citizens of the United States. The practice in the land department of the United States under this statute should have great weight in construing it. Hahn v. U. S., 107 U. S. 402, 2 Sup. Ct. 494; U. S. v. Moore, 95 U. S. 760; Brown v. U. S., 113 U. S. 568, 5 Sup. Ct. 648. Considering the statute and the practice thereunder, I think the citizenship of the stockholders of the Waterloo Mining Company was sufficiently established. It was not necessary to allege in the answer what was conclusively presumed from the facts alleged. Hence it was not necessary to

have alleged in the answer that the stockholders of appellee were citizens of the United States.

With these views of the law in this case, I think the decree in this case should be affirmed, and it is so ordered. The decree is affirmed, with costs of appellee.