86 P.2d 1040

**JOHNSON et al. v. RYAN et al.**

**No. 4403.**

Supreme Court of New Mexico.

Jan. 19, 1939.

Reid & Iden, of Albuquerque, for appellants.

Charles H. Fowler, of Socorro, for appellees.

BICKLEY, Chief Justice.

This is an action commenced by plaintiffs (appellants) to recover possession of a mining claim and to quiet title thereto, and for damages. The case was tried to the court. The court made findings of fact based upon the evidence, in substance that plaintiffs had performed all necessary acts in locating this mining claim, with the exception of recording a copy of the location notice, and rendered judgment in favor of defendants.

There is no bill of exceptions or transcript of the evidence in the record, so our decision must be arrived at solely from the findings of fact and conclusions of law.

The appellees complained of the findings of fact not reflecting the true facts to be adduced from the evidence, and upon the same day the findings were made filed exceptions thereto. But the appellees did not take a cross-appeal nor file a counter-praecipe assigning errors committed against them, or otherwise avail themselves of the provisions of Sec. 2 of Rule XVII, which would have necessitated the incorporation of the evidence in the record. So they have not preserved for review their complaint as to the court's error respecting the findings so that the result of the exceptions to the findings is rather to place emphasis upon the portions thereof unfavorable to defendants (appellees).

Briefly the findings are as follows: The plaintiffs posted a location notice on Dec. 10, 1936, and in all respects complied with the statutory requirements to make a valid location except recording their notice of location; that the defendants on Oct. 11, 1937, went on the ground claimed by plaintiffs and posted a notice of location, using the plaintiffs' location monument and copied verbatim plaintiffs' notice which was on the ground, adding one more reference to a permanent monument, and on Oct. 14th recorded the location notice. When the defendants returned to the ground on Oct. 15th, they found one of the plaintiffs there preparing to do some work on the claim; that prior to the posting of the notice by defendants, they personally knew two of the prior locators; that at the time defendants encountered one of the plaintiffs on the ground, defendants had not constructed their boundary monuments; that they located the claim on account of plaintiffs' not having recorded a copy of their location notice; that on Oct. 15th the defendants had full knowledge that plaintiffs had done and performed all work necessary to perfect the claim and were in actual possession thereof; that subsequent to the location made by plaintiffs, defendants had complied with all the statutory requirements of the United States and the State of New Mexico in locating the claim, including recording a copy of the location notice.

The findings taken alone are not perfectly clear as to what knowledge defendants had at what times, but are clarified somewhat on this point by the exceptions made by counsel for defendant, especially as to what the defendants knew as to the status of the claim as it appeared on the ground when they entered and posted their location notice. In plaintiffs' requested finding No. I, which was found by the court, appears the following: "That said claim was distinctly marked on the ground so that the boundaries thereof can be readily traced by four substantial posts, one at each corner of the claim, and each is so marked or inscribed as to indicate

the corner intended * * *" and in requested finding No. III, also found by the court, appears the following: "That plaintiffs in addition to posting the said monument sank a discovery shaft ten feet deep * * *".

Defendants' counsel excepted to requested findings Nos. I and III on the ground that the evidence as evaluated by him showed the defendants searched for and failed to find the corner monuments and that from the nature of the discovery work it could not be distinguished from old workings. The fact that the court found against defendants as to these contentions in the face of such exceptions shows that he believed the defendants had found the monuments and discovery shaft and knew they were there.

So it would appear that on Oct. 11th, when the defendants went upon the ground, they had actual knowledge that the plaintiffs had made a discovery of ore, marked the boundaries of their claim, had posted notice of location and done every other act necessary to a valid location of a mining claim except recording notice of location. When on Oct. 15th, the defendants encountered one of the plaintiffs on the ground, they had full knowledge that plaintiffs were claiming the ground under their location notice and were in actual possession thereof. If plaintiff Johnson told them of the facts this information was but confirmatory of what they saw on the ground.

The statute (§ 88-101, Comp.Stats.1929) is as follows: "Any person or persons desiring to locate a mining claim upon a vein or lode of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper or other valuable deposit, must distinctly mark the location on the ground so that its boundaries may be readily traced, and post in some conspicuous place on such location, a notice in writing stating thereon the name or names of the locator or locators, his or their intention to locate the mining claim, giving a description thereof by reference to some natural object or permanent monument as will identify the claims; and also within three months after posting such notice, cause to be recorded a copy thereof in the office of the clerk of the county in which the notice is posted. And Provided, no other record of such notice shall be necessary."

The court having found the facts as requested by plaintiffs, nevertheless decided the case against them. The reason for this result is that the court took the view that by the failure of the plaintiffs to record their notice within the time required by the statute "they forfeited all rights acquired under the location notice." Under this view the knowledge which defendants acquired of plaintiffs' claim from sources other than record thereof in the court house would be immaterial.

The trial court was mistaken, doubtless being misled by some earlier language of the Territorial Supreme Court, seeming but not in fact so holding.

In Cravens et al. v. Degner, 34 N.M. 323, 281 P. 22, we said: "We do not understand that a failure to make this record of itself effects a forfeiture of the rights initiated."

There is abundant authority in support of this holding. See Lindley on Mines, Vol. 1, 3rd Ed. § 273, where it is said: " * * * but in most states a failure to record would not work a forfeiture of the claim, or make it subject to relocation, unless the custom or rule so provided."

In 18 R.C.L., title "Mines" § 52, it is said: "When actual possession of a claim is taken and kept by the locator, a failure to record a notice of a mining claim does not avoid it, in the absence of any mining rule declaring that it shall have that effect, as against a subsequent entry and location in due form."

See English v. Johnson, 17 Cal. 107, 76 Am.Dec. 574; Snyder on Mines, Vol. 1, § 418; 40 C.J., Mines & Minerals, p. 845; Yosemite Gold Mining Co. v. Emerson, 208 U.S. 25, 28 S.Ct. 196, 52 L.Ed. 374; Dripps v. Allison's Mines Co., 45 Cal.App. 95, 187 P. 448; Stock v. Plunkett, 181 Cal. 193, 183 P. 657; Jupiter Mining Co. v. Bodie Consolidated Min. Co., C.C., 11 F. 666, 7 Sawy. 96; Sturtevant v. Vogel, 9 Cir., 167 F. 448, 93 C.C.A. 84, and cases there cited.

Immediately following the foregoing statement in Cravens v. Degner, supra, we continued: "It is our view that the recording will be sufficient if done before adverse rights have attached. 40 C.J. 810.

Lockhart v. Leeds, 10 N.M. 568, 63 P. 48, reversed Id., 195 U.S. 427, 25 S.Ct. 76, 49 L.Ed. 263, and Deeney v. Milling Co., 11 N.M. 279, 67 P. 724, relied on by appellant, do not hold otherwise."

The question then is: Have the defendants acquired rights adverse to plaintiffs?

The purpose of the requirement for posting and recording notice is to make known the purpose of the discoverer to claim title to the same to the extent described, and to warn others of the prior appropriation. Yosemite Gold Mining Co. v. Emerson, 208 U.S. 25, 28 S.Ct. 196, 52 L.Ed. 374.

In Butte & Superior Copper Co. v. Clark-Montana Co., 249 U.S. 12, 39 S.Ct. 231, 63 L.Ed. 447, the Court announces the purpose of recording provisions of the state statutes relative to mining claims and their effect on the rights of the locator where he fails to record, but a subsequent locator has actual notice of the former location, and the rule is announced as follows [page 234]: "Yosemite Mining Co. v. Emerson was concerned with a regulation of the state of California which prescribed the manner of the location of a claim. The regulation had not been conformed to and the validity of the location was attacked on that ground by a subsequent locator, who had had notice of the claim, he contending that there was forfeiture of it. The contention was rejected and we said, that to yield to it would work great injustice and subvert the very purpose for which the posting of notices

was required, which was, we further said, 'to make known the purpose of the discoverer to claim title to the' claim 'to the extent described and to warn others of the prior appropriation.' The comment is obviously applicable to the asserted defects in the declaratory statement of appellees. It, like the California requirement, had no other purpose than 'to warn others of the prior appropriation' of the claim, and such is the principle of constructive notice. It —constructive notice—is the law's substitute for actual notice, and to say that it and actual notice are equivalents would seem to carry the self-evidence of an axiom."

In the case of Stock et al. v: Plunkett, supra, the court said:

"The Supreme Court of the United States, * * * has held that subsequent locators, having knowledge of the previous location, could not avail themselves of defects in the prior location. * * *

"It follows that the location notice of the respondent, even though undated, was sufficient to establish his rights against the appellants—subsequent locators having notice of the prior location."

As we have said, there is some confusion as to dates, and it is true that the court found as requested by plaintiffs that on Oct. 15th defendants gained "full knowledge * * * that plaintiffs had done and performed all work necessary to *perfect* this claim and with knowledge on said last date that plaintiffs were in possession thereof, and *with knowledge of the names* of the locators *as well as personal acquaintance with at least two of the locators,* that they attempted to locate a claim *over said first location;* that they used the same location monument and *added a few rocks thereto;* that they used the same metal container plaintiffs had used and in fact *copied plaintiffs' location notice verbatim,* changing the names and dates only and added thereto only that 'said claim was opposite to the Kelly Ranch' or words to that effect; that this was done on the 11th day of October, 1937."

It is apparent from the foregoing and other findings that the knowledge defendants had was gained prior to the time "they attempted to locate a claim over said first location." This "attempt" was made on Oct. 11th by posting their notice, here relied on as the foundation of their right. They had three months after the posting of such notice to record it, and recording it on the 14th day of October did not add any support to their "attempt" referred to by the court.

In Deeney v. Mineral Creek Milling Co., 11 N.M. 279, 67 P. 724, the Territorial Supreme Court said the "posting of notice of claim is to be held to be the real inception of the right of the locator." [page 725.] In the same case the court said:

"In most of the states provision is made for the posting of a preliminary notice of claim or discovery notice, to be followed later by an entirely different notice meet-

ing other requirements. See Lindl. Mines, §§ 351, et seq., 380.

. "But here a preliminary or discovery notice is unknown to our laws. On the other hand, there is a positive require-ment of statute that the notice shall be in such form as that a copy thereof may be recorded. In other words, the first notice posted by the locator must be such a no-tice as will, when recorded, answer all the requirements of a valid location notice, or, as elsewhere called, 'location certificate.' "

█ So with us the posted notice and the recorded copy thereof contain identi-cal information. We think it important to bear this in mind in reading the mining case reports.

In the case at bar on Oct. 11th, or prior thereto, the defendants read the location notice posted by plaintiffs. If a copy of it had been timely recorded the record would have given defendants no additional in-. formation. As we have seen, the purpose of posting and recording notice is "to warn others of the prior appropriation"; so, defendants having seen plaintiffs' post-ed notice had as much "warning" as they would have had if they had read a tran-script of it in the record books. See Treasury Tunnel Mining, etc., Co. v. Boss, 32 Colo. 27, 74 P. 888, 105 Am.St.Rep. 60, so holding though the facts are in reverse.

Nor was the reading of the plaintiffs' posted notice the only knowledge defend-ants gained on Oct. 11th or prior thereto. As we have heretofore pointed out, the court found:

"That said claim (of plaintiffs) was dis-tinctly marked on the ground so that the boundaries thereof can be readily traced by four substantial posts, one at each corner of the claim, and each is so marked or inscribed as to indicate the corner in-tended. * * *

"That plaintiffs in addition to posting the said monument sank a discovery shaft ten feet deep * * *"

It is said in the annotation, Location of Mining Claims, in 7 L.R.A.,N.S., 763, as to the purpose of the requirement of mark-ing upon the ground, at page 856: "The object of the law in requiring the location of a mining claim to be marked upon the ground is to fix the claim and prevent swinging or floating, so that those who, in good faith, are looking for unoccupied ground in the vicinity of previous loca-tions, may be able to ascertain exactly what has been appropriated, in order to make the locations upon the residue. Book v. Justice Min. Co. [C.C., 58 F. 106] and Daggett v. Yreka Min. & Mill. Co. [149 Cal. 357, 86 P. 968] supra; Sanders v. Noble, 22 Mont. 110, 55 P. 1037; Gleeson v. Martin White Min. Co., 13 Nev. 442."

Defendants' counsel by his exceptions to the above findings heretofore noted tried to draw the court away from them but was unsuccessful. It thus appears that the de-fendants saw the plaintiffs' markings and diggings which were less than a year old.

In Pollard v. Shively, 5 Colo. 309, 317, it was said: "Marking the boundaries of the surface claim as required by statute,

is one of the first steps towards a location. It serves a double purpose. It operates to determine the right of the claimant as between himself and the general government, and *to notify third persons of his rights.* Another seeking the benefits of the law, going upon the ground, is distinctly notified of the appropriation, and can ascertain its boundaries. He may thus make his own location with certainty, knowing that the boundaries of the other cannot be changed so as to encroach on grounds duly appropriated prior to the change. The prevention of fraud by swinging or floating, is one the purposes served. The record also serves a double purpose. As between the claimant and the government, it preserves a memorial of the lands appropriated after monuments, in their nature perishable, are swept away. It also *supplements* the surface marking, in giving notice to third persons." (Italics ours.)

 The quotation from the L.R.A. note *supra,* indicates the common-sense principle that in possessory actions of this kind *good faith* upon the part of a relocator is a factor to be considered in the decision. It is also frequently said that every case of this nature must be decided upon its own facts.

The trial court sensed a lack of good faith on the part of defendants in their attempt "to locate a claim over said first location", particularly as "they well knew the man who had signed the notice of location" (plaintiffs' location) the court

thought the defendants were "starting out quite young and taking advantage of such technicalities." The court concluded his expressions of repugnance to the situation by saying: "However, it was not compulsory upon either of them to look for the locator." We are not sure about that. The law does not readily found adverse rights upon technical omissions of an adversary who in good faith has established a right by substantial compliance with the law's requirements, particularly if the omissions have not misled and are non-prejudicial to the contesting party.

Less than a year before defendants "attempted to locate a claim over" the claim of two men with whom they had a personal acquaintance, plaintiffs had done everything necessary to perfect their claim except recording copy of notice. The defendants relied upon the failure of the plaintiffs to take this one step of all the various steps they were required to take. They evidently had knowledge of plaintiffs' claim; they knew their names through personal acquaintance with them; how else would they have been able to search the indexes of records in the recorder's office to ascertain whether a copy of the posted notice of plaintiffs had been recorded?

In Eaton v. Norris, 131 Cal. 561, 63 P. 856, 21 Morr.M.Rep. 205, the court attached significance to the fact that one of the litigants "had been watching the plaintiff during the summer of 1897, to see if he did the required amount of assessment

work on his claims" [page 857], the point being made that whether the plaintiffs had technically complied with the law or not, they had done enough to put the defendants on notice of plaintiffs' location.

In Flynn Group Min. Co. v. Murphy, 18 Idaho 266, 109 P. 851, 138 Am.St.Rep. 201, it is said [page 855]:

"In Bismarck Mining Co. v. North Sunbeam Co., 14 Idaho 516, 95 P. 14, this court stated as follows: 'It is the well-settled doctrine of all of the later decisions that location notices and records should receive a liberal construction, to the end of upholding a location made in good faith;' and quotes from the case of Londonderry M. Co. v. United G. M. Co., 38 Colo. 480, 88 P. 455, as follows: 'Every case where this question is raised must therefore depend upon its own circumstances. As previously stated, the purpose of such location certificate is to give notice to subsequent locators; and, if by reasonable construction the language descriptive of the situs of a claim, aided or unaided by testimony aliunde, will do so, it is sufficient in this respect. In other words, the object of requiring a reference to a natural object or permanent monument is to furnish means by which to identify the claim, and whatever reference will accomplish this object ,satisfies the law.'

"It appears from the evidence that said Murphy Fraction was staked, and with the exception of one stake, they remained standing up to the time the survey was made for patent. It seems that one of the stakes had fallen down and was not up during the year prior to its survey for a patent. After reciting certain facts in Bismarck Min. Co. v. North Sunbeam Co. [14 Idaho 516, 95 P. 14], this court said: 'Those facts appearing, every reasonable presumption that can be drawn therefrom should be in favor of his knowing of said locations; and his grantees should not be permitted to take advantage of any minor defects in the location notices of said mining claims. If Oster had actual notice of the location and boundaries of said claims, neither he nor his grantees will be permitted to take advantage of some technical defect in the location notice, where it appears that said claims were located in good faith."

It is Hornbook law that whatever puts a party upon inquiry is a sufficient notice where the means of knowledge are at hand, and if a party omits to inquire he is chargeable with all the facts which by proper inquiry he might have ascertained.

In Stock v. Plunkett, supra, the court said: "The only question in the case is the effect of the failure to comply with the provisions of our Civil Code requiring the posting and recording of a dated location notice. The subsequent locators were informed by the posted location notice of the prior claim of the respondent and the extent thereof. By inquiring of the respondent, whose name was signed to the notice, they could have ascertained the nature of his claim and the date of his location.

Consequently appellants are charged with knowledge thereof."

There is something to be said in support of Justice Olney's observations in his dissenting opinion in the above case, that in many instances that rule might be unreasonable and impose too great a burden on a relocator. But as we have said, every case of this nature must be decided upon its own facts, and, without approving the view of the court in Stock v. Plunkett, just quoted, to be applied in all cases, we think it applies reasonably in the case at bar.

There is another circumstance which at least fixed the equities more in favor of the plaintiffs. The notice of claim which the defendants posted on the ground on Oct. 11th, declares: "The said claim is more particularly described as follows: It is distinctly marked on the ground, so that the boundaries thereof can be readily traced, by four substantial posts, one at each corner of the claim, and each so marked or inscribed as to indicate the corner intended."

The court in his informal findings said: "He claims by his own testimony that he didn't put the boundary monuments on the corners of the claim until four days after posting a notice of location. The court would like to get some law as to whether or not this complies with the law, that is to say, if he is allowed to post the notice of location, have it recorded and then go back and place the monuments in the four corners." and in the formal findings the court says: "as a matter of fact they (defendants) had not at that time (Oct. 15) constructed their boundary monuments."

Counsel for plaintiffs say that marking the boundaries on the claim "is the one and only requirement of the United States Statute on locating a mining claim. Until that is done there is no location and a notice that falsely states that it has been done is no notice at all."

Counsel for defendants counters with: "It is perfectly plain to even the casual eye, and it is accepted as a truism in all mining districts, that the notice is and shall be just a word picture of the claim when properly monumented and laid out."

We have seen illustrations of where a miner, having discovered a vein, posts a notice, the notice stating that he claims a specified time within which to mark the boundaries. See Newbill v. Thurston, 65 Cal. 419, 4 P. 409. And it may be (though we do not decide) that a person attempting to make a location has a reasonable time after posting his notice within which to mark his boundaries; but that is quite a different thing from saying in his posted notice that he had marked the boundaries when he had not done so.

It is our view that defendants had sufficient knowledge of plaintiffs' claim on October 11th, at which time the defendants *initiated* their claim, to be a substitute for the recordation of plaintiffs' notice, and it is unquestioned that before defendants had marked the boundaries of their claim on the ground or done any work on the claim

they had knowledge of plaintiffs' claim gained from the plaintiff Johnson on October 15th.

In Goau v. Russell, 3 Mont. 358, 12 Morr.Min.Rep. 630, it was decided: "If A has failed to do his annual labor, and B thereupon enters to relocate and proceeds so far as to put a notice on a stake at the discovery, but before he has marked the boundaries and otherwise completed the re-location A re-enters and resumes labor in *good faith,* A saves his location and renders null the prior acts of the re-locator."

That principle may be applied to the case at bar by substituting acquisition of knowledge by defendants for re-entry and resumption of work by A in the case cited.

Our statute seems to provide that the designation of the boundaries on the ground and posting of the notice shall precede its record. Referring to similar laws, the Supreme Court of California, in Gregory v. Pershbaker, 73 Cal. 109, 14 P. 401, 15 Morr.Min.Rep. 602, said [page 404]: "The local laws seem very clearly to provide that the designation of the boundaries on the ground and posting of the notice shall precede its record. In the land office, where the question between the applicant for a patent and the United States is the right of the applicant to purchase, the order in which are done the several acts which give the right to purchase may be immaterial. And so in an action in the state court, where only one of the parties claims to have complied with the laws, the order of the acts done by him may be immaterial. But in an action where both parties claim to have made locations, in themselves valid, and the question is which of the two has made the *prior* location, the prior actual or constructive possession, evidenced by posting the notice and by marking the boundaries in the manner required by statute, must prevail * * *."

See also Patterson v. Tarbell, 26 Or. 29, 37 P. 76.

A similar situation exists in the case at bar. Plaintiffs were in actual or constructive possession, evidenced by their acts in marking their claim on the ground, sinking a shaft, posting notice of their claim, of all of which defendants had knowledge before they posted their notice, and before they marked the boundaries of their claim on the ground. This view is supported by the finding of the court that plaintiff was in possession of the claim before defendants marked their boundaries.

From all of the foregoing we think the plaintiffs have not only the prior but the better right and should prevail.

The judgment is reversed and the cause remanded with directions to take such proceedings as may be necessary to restore possession to plaintiffs, and to proceed further as may be proper.

It is so ordered.

BRICE, ZINN, and SADLER, JJ., concur.

MABRY, J., did not participate.