## STATE OF NEBRASKA v. STATE JOURNAL COMPANY.*

FILED DECEMBER 20, 1905.  No. 13,833.

1. The unauthorized use of the literary production of another furnishes no ground for the recovery of damages except through the federal copyright laws. All persons are at liberty to print, publish and sell the literary productions of others, unless they are protected by a compliance with the act of congress for that purpose.

2. Trust: CREATION. Merely reposing confidence in another does not of itself create a trust, nor make a trustee of one in whom confidence has been reposed. To create a fiduciary relation by contract it is necessary that the consent of the trustee to assume that relation be expressed in the contract, or be derived therefrom by necessary implication.

3. The measure of damages for the unauthorized use of the property of another by a bailee thereof is not the value that may be produced by the labor and investment of the bailee, combined with such use of the property, but is the value of the use itself and any damage that may be done to the property in so using it, or, if the use amounts to a conversion, then the measure of damages will be the value of the property.

4. Manuscript, Unauthorized Use of: INJUNCTION: ACCOUNTING. If the defendant printed and manufactured to sell for its own benefit volumes of the reports of the supreme court of the state, containing matter prepared by the state and not protected by copyright, and in so doing unlawfully used manuscripts and other property entrusted to the care of the defendant to enable it to perform its contracts to manufacture specified volumes for the state, this would not give the state title to books so unlawfully produced, so as to enable it, by injunction, to prevent the defendant from disposing of the books, or entitle the state to an accounting of the proceeds of such sales.

* Opinion on rehearing filed Dec. 21, 1906. Judgment adhered to.

ORIGINAL action for damages for breach of contract. Defendant demurred. *Demurrer sustained and action dismissed.*

*F. N. Prout, Attorney General, Norris Brown* and *William T. Thompson,* for plaintiff.

*Hall & Marlay, contra* R. Pound *argued for Hall + Marlay*

*See 77 Neb. 758-3.*

SEDGWICK, J.

This defendant, which is a printing and publishing company, has, under various contracts with the state, published the reports of this court from volume 4 to volume 64 inclusive. In this case the state seeks to recover damages for alleged breaches of the printing contracts and abuse of the relation of trust and confidence assumed by the defendant as publisher. A general demurrer to the original petition was sustained, the plaintiff filed an amended petition, and the case is now submitted upon a general demurrer to this amended petition.

From the amended petition it appears that the state, from time to time, entered into successive contracts with the defendant, by which the defendant agreed to "print, stereotype, bind and deliver to said party of the first part 1,000 copies each" of a certain number of volumes of the reports mentioned in each respective contract, and also agreed that "all the supreme court reports printed under this contract shall be printed from stereotype plates, and that such plates shall belong to, and remain the property of the state of Nebraska, and that at the completion and delivery of each of said volumes, the stereotype plates from which the same was printed shall be delivered free of charge at the vault in the basement of the capitol building and there stored under the direction of the clerk or reporter of the supreme court. The contract also contained provisions as to the character of the work, the manner of performing it, and as to the payments to be made therefor.

The amended petition also alleges that the reporters of the supreme court prepared the opinions of the court for publication, "and when sufficient material accumulated for a volume of said reports (caused) one thousand copies of said volume to be stereotyped, printed, bound and delivered, with the stereotype plates thereof, to the proper officer of the state." These duties were required by the statute, and the law also required the state librarian to dispose of some of the copies of each volume by delivering them to the judges of the courts and other officers, and to sell the remainder at a price fixed by the statute for the benefit of the state, and when the 1,000 copies were exhausted to cause 500 additional copies of each volume to be printed, to be also sold for the state. It is alleged that the reporters did cause 1,000 copies of each volume to be printed, and an additional 500 copies of each of several of the volumes also to be printed and delivered to the librarian for sale on behalf of the state. It is in the petition alleged in full how many copies of each volume were so contracted for and printed and furnished to the state by the defendant, and how many of such copies have been sold, and how many of them still remain in the hands of the librarian for sale. It is also alleged that, after the defendant had printed the respective volumes, the stereotype plates were delivered to the state officer as the law and contracts provide.

It is further alleged that from the nature of the business it was necessary that the plaintiff should "entrust its said stereotype plates to the custody of defendant during the time necessarily required for printing the number of copies authorized by law; and in contracting for the publication of said official supreme court reports in the manner hereinbefore alleged, plaintiff reposed confidence in defendant and employed defendant as an agent and servant in a fiduciary capacity, believing that defendant would be honest and faithful in discharging all the duties imposed by law, by contract and by the relation of trust and confidence, and defendant entered into

said printing contracts in a fiduciary capacity in the relation of trust and confidence, and in that capacity plaintiff entrusted defendant with the making and custody of its stereotype plates for the sole purpose of carrying out the said publishing enterprise authorized by law and by said contracts; and plaintiff, believing that defendant had honestly and faithfully performed its duties in the premises, paid defendant, at the stipulated times and places, the several amounts agreed upon for an honest and faithful discharge of the duties and obligations imposed upon defendant by said contracts and the said relation of trust and confidence, and defendant received all of said payments; but defendant, in disregard of its said duty to plaintiff, and in violation and betrayal of its said relation of trust and confidence, and contrary to said printing contracts, and intending to cheat plaintiff and its said library fund, did unlawfully, secretly and clandestinely use, appropriate and convert to its own use said stereotype plates belonging to plaintiff, and did unlawfully, secretly and clandestinely for its own use and benefit print and reproduce from said stereotype plates, and bind, and sell for its own use and benefit, in addition to the said copies delivered to plaintiff, a large number of copies of each of said supreme court reports from volume 4 to 64, both inclusive, and did receive and retain for its own use and benefit $2.50 for each of said copies so unlawfully, secretly and clandestinely printed, bound and sold; * * * that the defendant has sold at least 700 copies of said volumes from 4 to 64 inclusive, making in all 42,700 copies, for which defendant received $2.50 a copy or $106,750, and made a net profit in unlawfully reproducing and selling said reports of $2 on each copy, or $85,400 on all. * * * Every unlawful sale by defendant of any copy of any of said reports deprived plaintiff of an opportunity to sell from its stock on hand a copy of the same report to defendant's purchaser, and the unlawful conduct and sales of which complaint is herein made prevented plaintiff from selling the copies it now has on hand,

and made it unnecessary for plaintiff to use its said stereotype plates for the reproduction of copies, except in the few instances hereinbefore alleged, to the damage of plaintiff and its library fund in the sum of $85,400.

"The principal item of cost in making said reports consisted in preparing and editing manuscript copy, composition, proofreading, indexing and stereotyping, all of which was borne solely by plaintiff; and in clandestinely using said stereotype plates, and in surreptitiously printing, binding and selling additional copies as hereinbefore alleged, defendant wrongfully and unlawfully used, appropriated and converted to its own use the said property of plaintiff. * * * Plaintiff is ignorant of and is unable to ascertain the condition of the account of the unlawful profits made by defendant out of plaintiff's said publishing enterprise in violation and betrayal of the relation of trust and confidence assumed by defendant under said printing contracts." It is alleged that a demand by the plaintiff that the defendant account for the profits has been refused; and "that the defendant has now on hand a large number of copies of said supreme court reports which were unlawfully, secretly and clandestinely reproduced from plaintiff's stereotype plates, and that defendant will continue to sell the same surreptitiously on its own account and for its own benefit, unless prevented by the interposition of this court." The prayer of the petition is: "1. That defendant may be perpetually enjoined from selling any official copies of said supreme court reports, except those lawfully purchased from the said reporter or from some other person with lawful authority to sell such reports. (2) That defendant may be required to deliver to the proper officer of the state of Nebraska, upon such terms as equity may require, all copies of said official supreme court reports in possession or control of defendant, except those lawfully purchased from said reporter or from some other person with lawful authority to sell such reports. (3) That an accounting may be taken of the profits wrongfully made by defendant out

of plaintiff's said publishing enterprise, and to that end that defendant's books of account may be subjected to the examination and scrutiny of plaintiff and this court, and that plaintiff may have judgment for the amount of said profits, or for $85,400, together with interest from March 1, 1905, and for costs of suit," with a general prayer for equitable relief.

1. The first ground of the plaintiff's complaint against the defendant is that one of the objects of the law and the provisions of the contract between the plaintiff and the defendant was to secure to the state the stereotype plates from which the reports were printed, so that the state could reproduce "copies of said reports indefinitely at nominal cost, and for the further purpose of preventing the clandestine use of its said stereotype plates to the detriment of the state and its library fund." It will be noticed that there is no allegation in the petition that these reports were copyrighted, or that any steps were taken on the part of the state, either through the action of the legislature or its contracts with the defendant, to protect the state in its right of authorship of the matter contained in the reports. If the object of the state was to prevent other parties from publishing the reports and selling them to the public, that object does not appear from any positive enactment of the legislature, nor from any provision of the contracts into which the state entered with the defendant.

2. The federal constitution authorizes congress to secure to authors and inventors for limited times the exclusive right to their respective writings and discoveries, and, pursuant to such authority, congress has provided that any citizen who shall be "the author, inventor, designer or proprietor of any book * * * shall (upon certain conditions) have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same." It is only through these provisions of the law that the writings of authors can be protected as their individual property. No such right

existed at the common law.   In *Banks v. Manchester*, 128
U. S. 244, 9 Sup. Ct. Rep. 36, the court said:

"A copyright cannot be sustained as a right existing at
common law; but, as it exists in the United States, it
depends wholly on the legislation of congress."

In that case the reporter of the supreme court of Ohio
attempted to obtain a copyright of the reports of the
opinions of the supreme court of that state for the benefit
of the state, and it was held that the reporter was not the
author, inventor, designer, or proprietor of the syllabus,
the statement of the case or the decision or opinion
of the court.   The action was to prevent the publication of
the opinions of the supreme court in the American Law
Journal.   Several other questions are discussed, which
are interesting in view of the circumstances of the case
at bar, but the importance of the case to this discus-
sion is in the principle that no property right can be
asserted in literary work that has been made public, ex-
cept under the provision of the federal constitution and
the legislation of congress pursuant thereto.   It is not
alleged in the petition in this case that any attempt was
made on the part of the state, or any one for it, to re-
serve to the state the exclusive use of the literary mat-
ter constituting the volumes of the reports in question.

3. It will also be noticed that there is no allegation
in the petition that this defendant has violated any of
the provisions of its contracts with the state, nor that it
has violated any of the express requirements of the statute.
It is alleged that the law and the contracts of the par-
ties created a fiduciary relation between the state and the
defendant.   Upon this proposition it must be observed
that the statutes do not forbid the printing and publish-
ing of these reports by any person or persons who may
desire to do so, and do not require the officers of the
state to prescribe any limitations of that kind in the con-
tracts that may be made for printing reports.   The con-
tracts with the defendant were made upon public com-
petition, as the law required, and no attempt was made

therein to limit the right of the defendant to print and sell such copies of the reports as it might see fit. These were ordinary contracts, upon the one part to perform certain services, and upon the other to pay a certain price therefor. The parties contracted in the manner of equals. Neither was in any degree under the influence or control of the other in entering into the contracts, or in the performance thereof. Merely reposing confidence in a party does not of itself create a trust, nor make a trustee of one in whom confidence has been reposed. If the relation of trust is created by a contract, and in view of that relation a confidence is reposed, a fiduciary relation may be said to exist. In most contracts of hire a special confidence is reposed in each other by the parties, but more than this is required to establish fiduciary relations. The consent, either expressed or implied, of the trustee to assume that relation is necessary in all cases in order to raise a fiduciary relation from contracts entered into by him. *Patten v. Warner,* 11 App. D. C. 149. Neither the law nor the contracts themselves raised any fiduciary relations between the parties.

4. It was, however, necessary under the contracts that the state entrust to the care of the defendant the manuscripts which had been prepared by the officers of the state, and it is claimed by the state that the stereotype plates that were, under the law and these contracts, to be the property of the state became so as soon as they were manufactured, and even while being manufactured, so that it was also necessary that these plates, as the property of the state, be entrusted to the care of the defendant. It is, of course, true that this required such confidence on the part of the state as is implied when one party entrusts its property to the care of another, and it would seem to follow that the defendant would not be justifiable in using, for its own private purposes, those things that were entrusted to its care to enable it to carry out its contract with the state, without the consent, express or implied, of the state. In so far as it has done so, it may be said

that it has violated the confidence of its employer, and has made an unwarranted and unlawful use of the property of the state. It is manifest that there is nothing in the law, nor in the contracts of the defendant, that would have prevented the defendant from using the literary matter contained in these volumes, as any other citizen of the state might use it. The right of any citizen to print and sell literary matter that is not copyrighted is undoubted. If under the law the state could have reserved to itself or its officers the sole right to publish the literary production contained in these reports, and had exercised that right, either by obtaining copyrights thereon, or by apt provision for that purpose in its contracts with the defendant, a different question would be presented from the one presented here. It did not, as far as the allegations of this petition go, attempt to do either, If we consider that the manuscripts furnished by the state might have been of intrinsic or pecuniary value, exclusive of the right of authorship in the literary production, the violation of the confidence reposed in the defendant consisted, not in the use of the matter contained in the manuscripts, but in the use of the manuscripts themselves, property belonging to the state. It is doubtful whether the stereotype plates became the property of the state before their delivery to the state. All provisions of the contract upon that point appear in the above quotations. That they should "remain the property of the state" was necessary under the law, which intended that the state should not dispose of these plates, and this expression in the contract is of no assistance to us in determining from what time they should become the property of the state. The provision that they "shall be delivered free of charge" makes it the duty of the defendant to transport them at its own expense, and would ordinarily fix the time of the change of title in the property so delivered; and, in the absence of any other provision as to when the title in these plates should vest in the state, would seem to be controlling. If, at any time before the delivery, the

plates had been destroyed, without fault of either· party to the contract, it would seem that the duty would devolve upon the defendant to restore them and deliver them according to the contract, and this is the ordinary test of ownership; so that, in the absence of any other provision in the contract, it would seem that the title of the state in the plates would begin upon the delivery of the plates. If, however, we suppose that the defendant was manufacturing the plates for the state, and that, as soon as the defendant selected the material from which they were to be manufactured and commenced the manufacture of the same, the plates became the property of the state, and if there was no consent in the contract, expressed or implied, that the defendant might use these plates for its own purposes, then such use of the plates by the defendant would be unwarranted, and it would become liable to the state therefor. Undoubtedly, one who uses the property, or property rights, of another is liable for damages. There is, however, no allegation in the petition as to the value of this use of the manuscripts or of the plates. The measure of damages for such unwarranted use of the property of another by a bailee is not the value that may be produced by the labor and investment of the wrongdoer, combined with such use of the proptery, but is the value of the use itself, and any damage that may be done to the property in so using it, or, if the use amounts to a conversion, then the measure of damages will be the value of the property itself. But this petition is not framed with a view to recover such damages, and no such damage is alleged.

5. The allegation that the sale of these reports by the defendant has deprived the plaintiff of an opportunity to sell them is, for another reason, wholly insufficient to support an action for damages against the defendant. There is an allegation that the plaintiff has been damaged thereby in the sum of $85,400, but there is no allegation of fact from which it is made to appear that any such damage could have arisen. It is not alleged that the plaintiff

would or could have realized any profit upon the sales that it might have made, if not prevented by the defendant; so that the statement that the defendant has been damaged would amount to an unwarranted conclusion. Nor is there any allegation of fact from which it could be determined that the plaintiff was or could have been prevented from making sales by the fact that the defendant sold copies of these reports.

6. From the foregoing considerations it may also be seen that there is no basis in the petition for the relief asked for by injunction. The plaintiff has no such property rights, either legal or equitable, in any volumes of reports printed by the defendant, and now in its hands, as would entitle the plaintiff to prevent the defendant from disposing of such volumes, or that would entitle the plaintiff to demand such reports from the defendant as the property of the state. It follows that the facts alleged in this amended petition are neither sufficient to enable the plaintiff to recover damages from the defendant, nor to entitle it to any relief in equity. It was understood upon the argument that the plaintiff would not attempt to plead further.

The demurrer to the amended petition is therefore sustained and the cause

DISMISSED.