FOSTER v. CALLAGHAN & CO.

(District Court, S. D. New York. January 25, 1918.)

No. 197.

1. EQUITY ⬤≈133—PLEADING—LACHES.
   Facts which excuse plaintiff from laches are properly pleaded in a bill asking equitable relief, and may be proven upon the trial.

2. COURTS ⬤≈347—FEDERAL COURTS—PLEADING—BREVITY.
   Under equity rule 25 (198 Fed. xxv, 115 C. C. A. xxv), providing that the bill shall contain a short and simple statement of the ultimate facts upon which plaintiff seeks relief, allegations in the bill of due diligence on the part of plaintiff, rebutting laches, which set out various letters showing diligence, being properly pleaded, are not subject to motion to strike on the ground of the violation of the rules of brevity.

3. JOINT ADVENTURES ⬤≈2—JOINT ADVENTURERS—WHO ARE.
   Where a contract between the author of a book and the publisher provided that the copyright should be taken in the name of the author and for a profit-sharing arrangement, the publisher and author were joint adventurers.

4. ASSIGNMENTS ⬤≈19—PERSONAL CONTRACTS.
   A contract between an author and publisher, which made the parties joint adventurers, is a personal one, which the publisher cannot assign without the author's consent.

5. JOINT ADVENTURES ⬤≈4(1)—DUTY OF ADVENTURERS—GOOD FAITH.
   Where a contract between an author and a publisher, under which the author retained copyright, made the parties joint adventurers, each owed the other the duty of utmost good faith and scrupulous honesty; and the publisher, who agreed to advertise and supply the trade with the book for 10 years, will be enjoined from falsely advertising a competing work in such a manner as to depreciate the value of the first author's book.

In Equity. Bill by Roger Foster against Callaghan & Co. On motions to dismiss bill and to strike out paragraphs thereof. Denied.

Jacob J. Aronson, of New York City, for plaintiff.
Harry D. Nims, of New York City, and Frank F. Reed and Edward S. Rogers, both of Chicago, Ill., for defendant.

MANTON, District Judge. The plaintiff sues in equity as the owner of the copyright and author of a treatise entitled "A Treatise

upon Practice in the Courts of the United States." It was first published in 1890, and five editions thereof have been published, with great profit to the plaintiff. The defendant is a publisher, and has published the third, fourth, and fifth editions under a contract the material terms of which are:

I. Said Foster grants Callaghan & Co. the exclusive right to publish his work on 'Federal Practice' for the period of ten (10) years from date, upon the condition that Callaghan & Co. perform each and all of the covenants herein contained.

II. A copyright in the name of said Foster is to be secured and official certificates thereof furnished said Foster.

III. Callaghan & Co. are to publish said book, and use its judgment in the distribution of presentation copies for purpose of obtaining reviews or notices, or otherwise promote the sale of the book, and to keep the trade supplied with copies, and to advertise the said book throughout the said ten (10) years.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

VI. Callaghan & Co. are to furnish said Foster with two copies of the proof sheets of said book, and for his personal use five (5) sets of said book when published.

VII. Said Foster hereby agrees that he will not prepare, edit, or cause to be published in his name or otherwise, anything which may interfere with the sale of the aforesaid work; but he shall have the right to publish an abridgment of said book for the use of law schools, which shall not exceed one volume in length. Said Callaghan & Co. shall have the option to publish said abridgment, if prepared by said Foster, upon the same terms as the complete work.

VIII. Said Foster agrees to act as the attorney of said Callaghan & Co. without cost to them, in case of any suit for infringement of copyright and to protect them against any judgment for infringement and to indemnify them for all costs of every kind arising from or due to such judgment.

IX. It is further agreed that Callaghan & Co. shall be the sole owner of all plates or mats made from said manuscript.

The fifth edition of this book contains 53 sections, or about 125 pages, devoted to treating the subject of criminal practice in the federal courts. The complaint alleges:

"That the same sets forth the effect of all the statutes and all the decisions upon the subject which had been published prior to the publication of said fifth edition, and that said book cites and refers to all of such statutes and all of such decisions as are of any importance and as can be of any practical use to a person seeking information concerning practice in the courts of the United States."

It also contains 35 forms for use in criminal procedure and chapter XXXII deals with the removal of causes and chapter XXX on the practice at common law in civil actions, including the sections therein which discuss writs of habeas corpus, writs of prohibition, and writs of certiorari, and chapter XXXVI, on writs of error and appeals, some of which include the topic of practice in criminal cases.

The fifth edition is comprised of three volumes, containing 3,102 pages. The complaint further alleges that the defendant, in violation of the agreement above referred to, published a work described as a treatise on Federal Criminal Procedure by John Elliott Byrne; the preface of said book containing the following statement:

"For a number of years the writer has realized the necessity for a work including in comprehensive, yet concise, manner the law of criminal procedure in the federal courts. Heretofore this law has been ascertainable only by

means of a search through the hundreds of United States statutes and thousands of cases."

It is claimed by the plaintiff that this statement is untrue, and that the plaintiff's book gives a full discussion of the federal criminal procedure, and that Byrne's book omits a number of topics which are found in the plaintiff's work. The complaint alleges that the defendant has widely advertised Byrne's Criminal Procedure, by circulars and advertisements in legal periodicals, and that the defendant, while so advertising and publishing Byrne's Federal Criminal Practice, has neglected to advertise the plaintiff's work as it had theretofore, and in its advertisements failed to state that the plaintiff's book contained a description of criminal practice in the courts of the United States; that the plaintiff wrote letters to the defendant, demanding advertisement of the plaintiff's book; and that it was only after such letters and demands that the defendant again advertised his work. The plaintiff alleges he did not learn of the intended publication of Byrne's book until April, 1916. He thereupon wrote and sent by mail to the defendant a letter, stating he considered the publication of Byrne's book a breach of defendant's contract with plaintiff, and further stated that he would hold defendant responsible, and further:

"My Federal Practice contains a chapter on criminal practice in the courts of the United States, which I have always requested you to emphasize in your advertisements, although you have not done so."

He again wrote on May 2, 1916. Plaintiff alleges that he did not receive Byrne's book until May 31, 1916, and then wrote again, protesting and demanding that the alleged false statement in advertisement of Byrne's book, above quoted, be eliminated from the preface and from the advertisement of Byrne's book.

[1, 2] Plaintiff thereafter pleads that he instituted an action in the City Court of the City of New York against Baker, Voorhes & Co., a New York corporation, which was selling Byrne's Federal Criminal Procedure, and further that, because of the institution of this action, the defendant, whose principal office is in Chicago, submitted to the jurisdiction of this court. He also pleads correspondence had with the attorney for the defendant here. This, it is claimed, is pleaded to avoid the claim of laches. The defendant moves to strike out paragraphs 10 and 11 of the bill, claiming that under equity rule 25 (198 Fed. xxv, 115 C. C. A. xxv), which provides that the bill should contain a short and simple statement of the ultimate facts upon which the plaintiff seeks relief, there should be omitted mere allegations of evidence.

While I think that allegations of due diligence might have been stated in more concrete form, still it is not fatal to the pleadings to plead in detail the due diligence on the plaintiff's part, to set forth the letters and make them part of the pleadings. It furnishes the defendant with particulars of the claim of due diligence, and ought not be stricken out on the claim of necessity for brevity in the pleadings. Facts which excuse the plaintiff from laches are properly pleaded in a bill asking equitable relief, and may be proven upon the trial. Wollensak v. Reiher, 116 U. S. 96, 5 Sup. Ct. 1137, 29 L. Ed. 350; Lockhart v.

Leeds, 195 U. S. 427, 25 Sup. Ct. 76, 49 L. Ed. 263; Edison Electric Co. v. Equitable Life Assur. Soc. of United States (C. C.) 55 Fed. 478.

[3-5] For the purpose of this motion, we must assume the charge in the bill (the statements as to Byrne's book) is true and that the plaintiff's treatise fully covers the subject of criminal procedure, and contains all the authorities and federal statutes bearing upon this subject-matter. This may appear differently upon the trial. The plaintiff holds the copyright to his book, and has a profit-sharing interest with the defendant in the publication of his treatise. Therefore the relationship is that of joint adventurers. The defendant has agreed, in paragraph third of the contract, to publish the book and use its judgment in the distribution of presentation copies, for the purpose of obtaining review, and to keep the trade well supplied with copies of it and advertise the book throughout the ten-year period. The charge is made that it was not advertised as it should and could be advertised, and that its advertisement is neglected, and the defendant is advertising another work, the plaintiff says, claiming it is a superior work to the plaintiff's, and which claim, plaintiff says, is false. This contract is personal and could not be assigned without the plaintiff's consent. Matter of D. H. McBride & Co. (D. C.) 132 Fed. 285; Selwyn v. Waller, 212 N. Y. 507, 106 N. E. 321, L. R. A. 1915B, 160.

Where the parties have entered into a joint adventure, the relation owed to each other is that of the utmost good faith and the most scrupulous honesty. Getty v. Devlin, 54 N. Y. 405; Mitchell v. Reed, 61 N. Y. 123, 19 Am. Rep. 252; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764. Even though they may not be copartners, if they be joint adventurers, there must be fair dealing between them, with the relations of mutual trust and confidence, which rigidly requires the utmost good faith on the part of each toward the other.

Whatever may be the rights of the defendant to compete with the plaintiff's book in the publication of some other, there can be no competition which of itself affects the publication and sale of the plaintiff's book. There can be no publication of reviews of some other book, or statements as to the qualities of some other book, which are false, or which by fair intendment deprecates or depreciates the value of plaintiff's book; nor can there be a failure to advertise plaintiff's book and in this way breach the contract. In other words, this defendant under its contract cannot so act, in competition or otherwise, as to injure the rights of the plaintiff, which the plaintiff has confided in it. There is an implied condition that such conduct will not be followed. Therefore for the defendant to perform its part of the contract with the plaintiff requires it not to interfere with the sale of the plaintiff's book by another publication.

When the plaintiff delivered his treatise to the defendant, he performed all the work that was required of him under the contract; but he would not be authorized to contract with a rival publisher. The defendant is required to use its judgment to sell the treatise intrusted to it for publication and to advertise it for ten years. The exercise

of its judgment does not permit it to fail to advertise it, or to so advertise some other book, publishing false statements as to that other book, which interfere with the sale of the plaintiff's book, for such conduct would be a failure "otherwise to promote the sale of the book. This implies an obligation of good faith, and to do anything which would make it impossible or unlikely that the trade would be well supplied with the books, so that the sale of the books would be promoted, would be a violation of the contract. It would also nullify the effect of the provision requiring advertisement of the book.

In Colgate v. Jas. T. White & Co. (C. C.) 180 Fed. 882, Judge Learned Hand held that a promise to publish the facts in a government biography carried with it by implication a promise not to publish them in another work, and granted an injunction. In Harper v. Klaw (D. C.) 232 Fed. 607, there was implied a negative covenant on the part of the plaintiffs not to use the ungranted portion of the copyright estate to the detriment, if not destruction, of the licensee's estate. There Judge Hough said:

"This being the fact, the law is analogous to that which implies, from a covenant to make a certain use of property, a covenant negative against doing anything else with it."

While the defendant here might serve both the plaintiff and Byrne in publishing the books of each, it cannot do so with a breach of faith to the plaintiff, and it cannot do so where their interests are diverse, and where what it does for Byrne necessarily detracts from its efforts for the plaintiff. In State of Nebraska v. State Journal Co., 75 Neb. 275, 106 N. W. 434, 9 L. R. A. (N. S.) 174, 13 Ann. Cas. 254, cited by the defendant, defendants were printers, who agreed to manufacture stereotype plates of reports and opinions which were not copyrighted, and to deliver the same to the state authorities. There was no contract to sell the reports when printed, nor were the reports copyrighted. They, therefore, had the right to sell the plates. After the plates had been delivered to the state, the action was commenced, and the court held that the trust relation was terminated, and injunctive relief was denied.

Judge Lowell said in Singer Co. v. Union, etc., Co., Fed. Cas. No. 12,904:

"I think the fair result of the latter cases may be thus expressed: If the case is one in which the negative remedy of injunction will do substantial justice between the parties, by obliging the defendant either to carry out his contract or lose all benefit of the breach, and the remedy at law is inadequate, and there is no reason of policy against it, the court will interfere to restrain conduct which is contrary to the contract, although it may be unable to enforce a specific performance of it."

See, also, Stephens v. Ohio State Telephone Co. (D. C.) 240 Fed. 759, and Montgomery Traction Co. v. Montgomery Light & Power Co., 229 Fed. 672, 144 C. C. A. 82.

Taking the allegations of the complaint at their face value for truthfulness, as I am obliged to do on this motion, I think the plaintiff is entitled to equitable relief, and I must deny the motion to dismiss the complaint; also the motion to strike out paragraphs 10 and 11 thereof.