## YOUNG & VANN SUPPLY CO. v. GULF, F. & A. RY. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. March 3, 1925.)

No. 4459.

1. **Equity 427(3)—Any equitable relief may be granted under prayer for general relief.**

If a bill states a cause of action entitling complainant to equitable relief on any theory of the case, a court may grant it under a prayer for general relief, though other specific relief may be mistakenly prayed for.

2. **Appeal and error 768 — Statements in brief may be considered as admissions of facts.**

Statements in the brief of a party may be considered by the appellate court as admissions of facts.

3. **Railroads 194(6)—Creditor of receiver held entitled to enforce payment against purchaser of property.**

Where an order confirming a sale of railroad property under a plan of reorganization required the purchaser as a part of the purchase price to pay claims of creditors of the receiver, any such creditor is entitled to the benefit of such provision and may enforce the payment by a suit in equity against the purchaser or his assignee.

Appeal from the District Court of the United States for the Northern District of Florida; William B. Sheppard, Judge.

Suit in equity by the Young & Vann Supply Company against the Gulf, Florida & Alabama Railway Company and others. Decree for defendants, and complainant appeals. Reversed and remanded.

R. H. Scrivner, of Birmingham, Ala. (Stokely, Scrivner, Dominick & Smith, of Birmingham, Ala., on the brief), for appellant.

William Fisher, of Pensacola, Fla., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. In this case the Young & Vann Supply Company, an

Alabama corporation, brought its bill against the Gulf, Florida & Alabama Railway Company and the Muscle Shoals, Birmingham & Pensacola Railway Company, both Florida corporations, and against John T. Steele, individually and as receiver of the first-named railroad, seeking to recover for materials and supplies sold to Steele as receiver. On motion the bill was dismissed, and from that judgment this appeal is prosecuted.

The bill, with amendments and exhibits, is voluminous and somewhat diffuse. However, proceedings in equity are to be reasonably construed. Lockhart v. Leeds, 195 U. S. 427, 25 S. Ct. 76, 49 L. Ed. 263. Applying that rule, on analysis, the bill, stripped of surplusage, thus states the case.

The Gulf, Florida & Alabama Railway Company, with an authorized capital stock of $7,500,000, of which $4,660,000 was outstanding, was the owner of a railroad having some 154 miles of main line and 29 miles of sidings running from Pensacola, Fla., to Kimbrough, Ala., with docks, a coal tipple, and warehouses at Pensacola; the whole representing an investment value in round figures of $9,171,000.

The property was burdened with a mortgage to secure an issue of 5 per cent. gold bonds in the sum of $10,000,000, of which $4,410,000 were actually issued.

In May, 1917, receivers were appointed for the property by the District Court for the Northern District of Florida on a bill filed by Hubert C. Mandeville. This matured the mortgage, and the trustee, the Columbia Trust Company, brought suit to foreclose. The receivers first appointed resigned, and in January, 1918, John T. Steele was appointed receiver on the bill of the trust company.

Steel operated the railroad for about four years and purchased necessary materials and supplies from many persons including plaintiff. The receipts during the receivership exceeded operating expenses, and a considerable amount of money from that source was expended in the purchase of new equipment and in other permanent improvements. There is still due and owing to plaintiff a balance of $4,890.09, which the receiver repeatedly promised to pay in full. This claim was referred to a master, was reported on favorably, and passed to judgment.

Looking to the reorganization of the road, a bondholders' committee was organized, and over 80 per cent. of the outstanding bonds were deposited with it. In connection with this committee, a syndicate was also organized with Steele as its manager. This syndicate financed about $1,000,000 of receiver's

certificates, the proceeds of which went into permanent improvements. In addition, a receiver's creditors' committee was organized by local creditors, and all creditors in the same class with plaintiff were required to unconditionally and irrevocably assign their claims to this committee in order to derive any benefit from the reorganization. Plaintiff did not assign its claim. The plan of reorganization worked out by these three committees acting together contemplated the organization of a new company to be known as the Muscle Shoals, Birmingham & Pensacola Railway Company, and also a Securities Company to hold all the securities of the new company; the obligations of the Securities Company to be issued to creditors of all classes in adjustment of their claims. It is unnecessary to state all of the details of this plan of reorganization, which was several times changed, although they are fully set out in the bill.

With this somewhat complicated plan of reorganization in view, the property was sold under a foreclosure decree. This decree provided that the money realized from the sale should be first applied to the payment of costs of the receivership, including the fees of the special master, fees of the receiver and his counsel, and ordinary costs of court, and second to the payment of claims such as plaintiff's and taxes, etc., and the receiver's certificates and the bonds were subordinated.

The three committees above named agreed among themselves to bid $90,000 in cash for the road, and the sale was made on November 26, 1921, for that price. William Fisher, ostensibly representing the receiver's creditors' committee, was the purchaser. He promptly assigned his bid to Steele, who in turn assigned to the new company which had been organized, and the deed was made directly to this company. Steele was president of this company. Steele, in addition to paying the $90,000 cash bid, which was all absorbed in the payment of costs, leaving nothing for creditors in the class with plaintiff, agreed also to pay 75 per cent. cash of all claims due for materials and supplies and 25 per cent. of such claims in preferred stock in the Securities Company above referred to. On these terms the sale was confirmed. Steele thereafter paid over $195,000 in cash and agreed to turn over some $60,000 par value of securities to creditors.

The Interstate Commerce Commission by its order entered May 29, 1923, authorized the new company to issue not exceeding $2,500,000 of common stock, which was turned over to Steele in payment for the road, $1,-

500,000 of first mortgage 6 per cent. gold bonds, $600,000 to be sold at not less than 85 per cent. par and accrued interest to secure new money, $400,000 to be delivered to Steele in payment of certain expenditures made by him in operating the railroad during the interval between the sale and the taking of it over by the new company, expenses of the syndicate, and certain legal fees and other expenses, and $500,000 to be held unincumbered in the treasury for future capital purposes.

The bill alleges that plaintiff had no notice that the property was to be sold for only $90,000 in cash, but does not allege that plaintiff had no notice of the sale at all, nor that it had no notice of the order of confirmation.

The bill prays for service, and that the property in the hands of the Muscle Shoals, Birmingham & Pensacola Railway Company be impressed with a trust in plaintiff's favor for the amount of its claim, and that it be eventually sold to satisfy plaintiff's debt and costs, and for such other or different relief as plaintiff might be entitled to under the pleadings and proof.

The motion to dismiss was on the following grounds: That there is no allegation in the bill that plaintiff was not offered participation in the reorganization upon the same basis as the creditors represented by the receiver's creditors' committee; that the allegations of the bill are not sufficient to show that the defendant the Muscle Shoals, Birmingham & Pensacola Railway Company is a continuation of the previous corporation owner of the railway properties; that the bill of appellant is in fact a collateral attack upon the decree of confirmation; that the bill of complaint fails to allege any matter of equity entitling plaintiff to the relief prayed for.

We are not favored by an opinion of the District Court, at least none appears in the record, so do not know on what theory the bill was dismissed.

Pretermitting any question as to the sufficiency of the price, the fairness of the plan of reorganization, and whether the property is now in the hands of its former owners, about all of which we express no opinion, another aspect of the bill impresses us most strongly.

[1] If a bill states a cause of action entitling the plaintiff to equitable relief on any theory of the case, a court may grant it under a prayer for general relief, notwithstanding other specific relief may be mistakenly prayed for. Lockhart v. Leeds, supra.

Plaintiff was bound by the decree of confirmation if it had notice, which the bill does not negative, but nevertheless plaintiff is also entitled to the benefit of that decree.

[2] The order of confirmation is not in the record. It is not necessary, however, to look to the order, as the facts above stated regarding Steele's promise to pay creditors in the same class as plaintiff as part of the purchase price clearly appear in the application of the new company to the Interstate Commerce Commission, which is annexed and made a part of the bill. Moreover, in the brief for appellees appears the statement that the sale was confirmed upon the express condition that the creditors' committee would give the same protection to all the creditors of the receiver having claims in the same respective categories as to those represented by the committee, and that appellant's claim would have been entitled to be paid 75 per cent. in cash and 25 per cent. in stock. The brief further shows that the decree of confirmation required that all new creditors should come in within 15 days thereafter, in order that the price Steele had to pay the creditors' committee should be definitely determined. We may consider the statements in the brief as admissions of facts. Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539. And, of course, the District Court could take notice of its own records in considering the bill. Dimmick v. Tompkins, 194 U. S. 540, 24 S. Ct. 780, 48 L. Ed. 1110.

[3] Steele, who represented all parties in interest, promised to pay the claim of plaintiff, as well as all others of the same class, 75 per cent. in cash and 25 per cent. in securities, as part of the purchase price of the property and confirmation of the sale was only on those terms. The deed was made direct to the Muscle Shoals, Birmingham & Pensacola Railway Company, and it is bound by Steele's promise and the conditions of the sale. It was not necessary that plaintiff should have assigned its claim to the receiver's committee, nor that it should have done anything further in the way of filing or proving the claim to receive the benefit of this promise. The provision that new creditors should prove their claims within 15 days had no application to it. The claim had been filed long before, was admitted by Steele, and passed to judgment. Steele necessarily knew the amount of plaintiff's claim and was bound to take notice that it was one of those he had to consider in fixing the purchase price. Plaintiff is entitled to the benefit of the order of confirmation at this time. Under the prayer for general relief, the

District Court was authorized to so decree, and that court, of course, has ample jurisdiction to enforce the terms of the sale by such action as may be appropriate and necessary in the premises. Camden v. Mayhew, 129 U. S. 73, 9 S. Ct. 246, 32 L. Ed. 608.

The judgment dismissing the bill will be reversed, and the case remanded for further proceedings not inconsistent with this opinion.

Reversed.