In re EASTERN PALLIAMENT CORPO-
RATION.

GRAHAM v. POTTIER et al.
No. 173.

Circuit Court of Appeals, Second Circuit.
Dec. 4, 1933.

872

Gotthold & Gross, of New York City, for Robert H. Graham as trustee in bankruptcy of Eastern Palliament Corporation.

Rosenthal, Hamil & Wormser, of Chicago, Ill. (Lessing Rosenthal, of Chicago, Ill., of counsel), for appellant.

Rounds, Dillingham, Mead, Neagle & Boyd, of New York City (Ralph S. Rounds, George M. Wolfson, and John S. Chapman, Jr., all of New York City, of counsel), for petitioners-appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Wallach Bros. was a New York corporation organized in 1904. Under that name, it carried on a retail clothing business with several stores in New York City from the year above mentioned until it became involved in financial difficulties in 1932, caused its name to be changed to Eastern Palliament Corporation, filed a voluntary petition in bankruptcy in the District Court for the Southern District of New York on August 31, 1932, and was adjudicated a bankrupt the same day. One of the stores was located in the premises known as 487–491 Fifth avenue and 12 East Forty-Second street. The title to this property was, and is, held by trustees under the will of Augustine Pottier. Wallach Bros. came into possession of the premises in 1924 by means of transactions as follows: On January 6, 1920, the trustees of Pottier leased the property to National Drug Stores Corporation for the term of twenty-one years with the privilege at the option of the lessee of two renewal periods of twenty-one years each. On September 21, 1921, the 489 Fifth Avenue Corporation was organized under the laws of New York, and to it the Pot-

tier lease was assigned on March 31, 1922. Wallach Bros. had had nothing to do with the formation of the 489 Fifth Avenue Corporation, but in June, 1924, purchased its entire capital stock. Thereafter Wallach Bros. occupied the basement and the first three floors of the building fronting on the Fifth avenue side of the property and the first floor on the Forty-Second street side under a lease from 489 Fifth Avenue Corporation. Later, a portion of the space it occupied at first was vacated, but that is not of consequence for the moment. The only thing owned by 489 Fifth Avenue Corporation was the Pottier lease under which it was entitled to hold the property. After all of its stock was acquired by Wallach Bros., the latter corporation through its nominees controlled the former absolutely. The Pottier lease required the 489 Fifth Avenue Corporation to pay an annual rental of $75,000 and to maintain the property and pay the taxes. The lease which Wallach Bros. took from the 489 Fifth Avenue Corporation called for an annual rental which varied from $150,000.00 to $165,-000.00 and expired on February 28, 1930. This lease was not renewed, but Wallach Bros. continued to occupy the premises after it expired and from time to time provided the money to pay the rent under the Pottier lease and to pay other fixed charges.

Owing to business conditions in 1932, the rent reserved under the Pottier lease was considered excessive by Wallach Bros., and attempts to secure a reduction were made, but were unsuccessful because no agreement satisfactory to all concerned could be made with the Pottier trustees. With matters standing thus, on June 29, 1932, the Fifth Avenue Corporation executed a lease to Wallach Bros. of that portion of the premises which the latter then occupied. This lease covered the basement and the first and second floors of the building on Fifth avenue. It ran for the term from July 1, 1932, to June 30, 1940. It called for a minimum annual rental of $40,000, with an increase of 5 per cent. of the retail sales in excess of $800,000. Wallach Bros. then paid the Fifth Avenue Corporation $15,000 as advance rental under the lease to November 1, 1932, and a portion of the November rent due on that date. This money was used by the Fifth Avenue Corporation to pay the arrears in rent under the Pottier lease to July 1, 1932. The next day the Fifth Avenue Corporation filed a voluntary petition in bankruptcy and was adjudicated a bankrupt. Its sole creditor was Wallach Bros. A trustee was elected July 28, 1932, and thereafter conducted its

affairs in bankruptcy. The rent due in advance on July 1, 1932, under the Pottier lease, was not paid; nor was that due on October 1, 1932, paid; nor were the taxes paid which fell due November 1, 1932.

Notice of the sublease to Wallach Bros. was given to the agents of the property as soon as the Fifth Avenue Corporation went into bankruptcy, and a copy of such notice was at once sent to the attorney for the Pottier trustees. Thereafter the negotiations between representatives of the Pottier trustees and of Wallach Bros. looking toward an adjustment of the matter were continued through the change of the latter's name and its bankruptcy under its new name on to about October 28, 1932, but no agreement could be reached. Then a notice in behalf of the Pottier trustees was served on the Fifth Avenue Corporation and its trustee in bankruptcy, demanding payment on or before November 4, 1932, of the rent due under the Pottier lease on July 1, 1932, and October 1, 1932, in all being $37,500, with interest, "or the possession of said premises, the Landlords reserving to themselves, however, in case of your failure to comply with this demand, all rights given to them in the above named indenture of lease and by law."

On November 3, 1932, the Pottier trustees presented their petition in the 489 Fifth Avenue Corporation bankruptcy proceedings and their petition in the Eastern Palliament Corporation bankruptcy which were referred to a referee, heard together, and led to the order from which this appeal was taken.

These petitions brought before the court by reference the terms of the Pottier lease; alleged the making of the sublease to Wallach Bros. on June 29, 1932, and incorporated that lease by reference; alleged on information and belief that when the sublease was made it was the intention of both parties to go into bankruptcy; that the lease was executed in furtherance of a purpose to defraud the petitioners in depriving them of the use of the property; and that the rent reserved in the sublease was inadequate. It was further alleged that the petitioners desired to resume the occupancy of the premises; that the trustee in bankruptcy of the Fifth Avenue Corporation had taken no action to affirm the Pottier lease and was entitled to no additional time in which to elect to affirm or disaffirm. In the Eastern Palliament Corporation bankruptcy, the petition prayed to have the lease of June 29, 1932, set aside as void; to have the premises held under it vacated and surrendered to the petitioners; to permit the petitioners to institute summary proceedings to recover possession; to determine the reasonable value of the use of the premises; and for an order directing such payment and for general relief.

In the 489 Fifth Avenue Corporation matter they prayed to have the trustee directed forthwith to disaffirm the Pottier lease and surrender the premises; for leave to institute summary proceedings for the recovery of possession; for an order directing the trustee to pay the rent reserved in the lease from July 1, 1932, to the time the premises should be vacated; for an order holding void and setting aside the sublease of June 29, 1932; for an order directing the trustee to collect from the trustee in bankruptcy of Eastern Palliament Corporation, by taking, or joining, in appropriate proceedings to that end, the reasonable value of the use of such part of the property as the Eastern Palliament Corporation and its trustee in bankruptcy occupied from July 1, 1932, to the termination of their occupancy; for an order restraining the trustee from disposing of any rentals he had received, or would receive, from subtenants and from making new leases or contracts or rescinding or altering existing ones except as the court on notice to the petitioners should direct; and for general relief. The Pottier lease, incorporated by reference in the petitions, was admitted in evidence. It contained a clause prohibiting subleasing without first obtaining the written consent of the landlords, except to subtenants of pecuniary responsibility.

The referee declined to characterize the sublease of June 29, 1932, a fraud upon the landlords, but found the facts attending its execution as outlined. He found that the rent reserved was inadequate, and that this, coupled with the imminence of the bankruptcy of the parties and the effect of the clause restricting subleasing, required that the lease be held void and set aside. In this respect the District Court, in disposing of the petition for review, said: "I think, too, the Referee was right in disregarding the Wallach sublease of June 29, 1932; for the rental called for was plainly inadequate, and the lease itself was executed under circumstances which destroyed its validity (Klasko [Finance Corporation] v. Belleaire, 257 N. Y. 1 [177 N E. 289]; Prudence v. 160 W. 73d St., 260 N. Y. 205 [183 N. E. 365, 86 A. L. R. 361])."

The appellant urges us to hold that the decree must be reversed because the decision of the referee, approved by the District Court, that the sublease of June 29, 1932,

874

was void was based upon a finding that it was executed "without the consent or approval of the landlord and in violation of the terms of the main lease"; that this ground was not alleged in the petitions; that there was no prayer for relief on such ground; and that consequently the decree was not supported by the pleadings.

"The rule that the decree must conform to the allegations, as well as to the proofs of the parties, is not only one which justice requires, but one which necessity imposes on courts," in the words of Chief Justice Marshall in Crocket v. Lee, 7 Wheat. 522, 527, 5 L. Ed. 513, is as true now as it was then. But present conceptions of justice permit a somewhat liberal construction of pleadings to determine what is alleged, especially in equity, where technical forms must give way under Equity Rule 18 (28 USCA § 723) and a plaintiff may rely upon a short and simple statement of the ultimate facts upon which he asks relief under Equity Rule 25 (28 USCA § 723). The Pottier lease, which limited the right to sublease as above indicated, was referred to as a part of the petitions. What it contained, as thus alleged, was before the court as a part of the proof. There was a general prayer for relief. The defendants well knew the provisions of this lease, for it was the groundwork upon which the sublease rested. In such a setting it is clear that the substantial rights of the parties in so far as they depended upon this lease were before the court on the pleadings as well as the proof. The extent to which criticism, if it be such, of the petitions may justly go is that they did not emphasize the restrictions in the Pottier lease on subleasing; but no one could have been misled. Compare Lockhart v. Leeds, 195 U. S. 427, 25 S. Ct. 76, 49 L. Ed. 263; United States v. Charpentier (C. C. A.) 54 F.(2d) 361; Wilcox v. El Banco (C. C. A.) 255 F. 442. As the sublease was made without the consent of the landlords and there is nothing to indicate that Wallach Bros. were then financially responsible, the decree of the District Court, in so far as it may have been based on the restriction, that the sublease be set aside, was justified on the pleadings and, the question of waiver aside, on the proof.

■■ But the citation of the two New York cases by the District Court in its memorandum in support of the conclusion that the "lease itself was executed under circumstances which destroyed its validity" shows that the decree was put on broader ground than the express limitation upon subleasing. On

June 29, 1932, the adjudication in bankruptcy of the 489 Fifth Avenue Corporation was but one day off. Of course the parties to the lease knew it was imminent. The bankruptcy of Wallach Bros. was impending. The execution of the lease at an inadequate rental under such circumstances, so plainly done for the purpose of tying up the property and keeping it in the possession of Wallach Bros. in disregard of the rights of the landlords who had refused to reduce the rent reserved in their lease, stamps the transaction as fraudulent in law and not to be given effect in equity. Prudence Company v. 160 W. 73d St. Corp., 260 N. Y. 205, 183 N. E. 365, 86 A. L. R. 361; Klasko Finance Corp. v. Belleaire Hotel Corp., 257 N. Y. 1, 177 N. E. 289. It is true that there was no misrepresentation and no fraud or deceit in that sense. It is also true that the referee refused to call the transaction a fraud and that the District Court failed to say it was in so many words. But the essential facts are not in dispute, and the lease was rightly set aside under the principles of fraud, set forth in the two cases above cited, which the District Court recognized and followed. On appeal we decide whether the decree was right or wrong regardless of whether any reasons, or whether or not the right reasons, for the decision were given for it. Gideon v. Hinds (C. C. A.) 238 F. 140; Dean v. Davis (C. C. A.) 212 F. 88.

■ The petitioners were not in privity with either Wallach Bros. or their trustee in bankruptcy, but, as the result of the sublease would be to prevent the 489 Fifth Avenue Corporation having sufficient funds to pay the rent under the Pottier lease when it fell due, they were directly injured by the fraudulent sublease and may act to have it set aside. Their right does not rest upon any standing as a creditor of 489 Fifth Avenue Corporation when it went into bankruptcy. They had been paid to July 1st, and were not creditors of the bankrupt estate who could act as such, or for whom the trustee could act, to have the sublease set aside. The advance payment of rent was used to pay rent due the landlords under the Pottier lease but they did not accept it as a payment of rent in advance under the sublease. Consequently, Wallach Bros. are entitled to no credit as against the petitioners for advance rent paid under the sublease to the 489 Fifth Avenue Corporation.

■■ Notwithstanding the foregoing, it is claimed that the petitioners have waived their rights to have the sublease set aside by de-

manding payment of rent under the Pottier lease on October 28, 1932, or possession of the premises, and by giving notice on December 16, 1932, of their election to terminate the Pottier lease on December 27, 1932, on several grounds which did not include the execution of the sublease. This does not present the situation held to amount to a waiver in Durand & Co. v. Howard & Co. (C. C. A.) 216 F. 585, L. R. A. 1915B, 998. While a demand for rent under the Pottier lease due from July 1, 1932, was made in the notice of October 28th, it was accompanied by an express reservation of all rights "given to them (the petitioners) in the * * * lease or by law" in case the rent was not paid. This was a demand for payment for the use of the premises according to the rental value of the lease, and, if it had been complied with, there would have been a waiver, since the protecting reservation was limited to noncompliance. It was, however, in view of the reservation, but an offer to waive upon condition that the rent should be paid, and, as the rent was not paid, the condition was not met. The notice of election on December 16th to terminate the lease on grounds stated without relying on the breach of the clause restricting subleasing may have been a waiver of that as a ground for the notice of termination and to quit, though we need not so decide, but it is no waiver more extensive than that.

▮▮ The fair rental value of the premises was found on evidence which, though conflicting, amply supported the amount fixed. The trustee of Eastern Palliament Corporation was ordered to pay directly to the petitioners such amount for the time the premises were occupied from the adjudication of that corporation. This was correct unless the rent should be paid to the trustee of the 489 Fifth Avenue Corporation up to the date of the termination of the Pottier lease. The obligation to pay the landlords while the Pottier lease was in force was that of the 489 Fifth Avenue Corporation and of its trustee, and they would, generally speaking, be entitled to any payment by subtenants for the use of the premises the Fifth Avenue Corporation held under the Pottier lease while that lease was in force. Payment of the rental due under that lease was all these petitioners were entitled to. But as the rent due under the Pottier lease has not been paid and all the parties in interest are parties to these proceedings, there was no error in ordering the payment for the use of the property made directly to the petitioners. When it is remembered that Eastern Palliament Corporation owned all of the stock of the 489 Fifth Avenue Corporation, under its former name of Wallach Bros., controlled its every act, and was its sole creditor in the bankruptcy proceedings, it is apparent that the corporate existence of 489 Fifth Avenue Corporation separate from that of Wallach Bros., both before and after the latter's name was changed, was but an unreal formality which will be disregarded and 489 Fifth Avenue Corporation given the status it in fact had, of an instrumentality merely of its owner. Chicago, M. & St. P. R. Co. v. Minneapolis C. & C. Ass'n, 247 U. S. 490, 501, 38 S. Ct. 553, 62 L. Ed. 1229; In re Muncie Pulp Co. (C. C. A.) 139 F. 546; Edward Finch Co. v. Robie (C. C. A.) 12 F. (2d) 360; Wabash Ry. Co. v. American Refrigerator Transit Co. et al. (C. C. A.) 7 F. (2d) 335; Wilson & Toomer Fertilizer Co. v. American Cyanamid Co. (C. C. A.) 33 F. (2d) 812; Radio-Craft Co. v. Westinghouse Elec. & Mfg. Co. (C. C. A.) 7 F.(2d) 432. The court, having jurisdiction of all the parties and the subject-matter, was therefore right in ordering that payment be made directly to the petitioners. In Meehan v. King (C. C. A.) 62 F.(2d) 435, the bankrupt corporation entitled to the rents as after-acquired property was not a party to the proceedings. Furthermore, the rents actually received by the trustee of Eastern Palliament Corporation from other tenants using other portions of the property were in the control of the court, and it was correct to order them paid directly to these petitioners.

▮▮ The refusal to allow any credit for changes in the premises was not error, as the Pottier lease provided that, at its expiration or sooner termination, the tenant would surrender "the demised premises, including any building or buildings thereon erected and all additions to the said demised premises during the said term, with the appurtenances." As the landlords did not covenant to pay for improvements, there was no obligation on their part to do so. Kutter v. Smith, 2 Wall. 491, 17 L. Ed. 830; Pike v. Butler, 4 N. Y. 360.

Decree affirmed.