**ABELL et al. v. ANDERSON.**

No. 9890.

Circuit Court of Appeals, Sixth Circuit.

April 9, 1945.

Edward P. Humphrey, of Louisville, Ky. (Lafon Allen, Percy N. Booth, Henry E. McElwain, Jr., Benjamin F. Washer, A. C. Van Winkle, David R. Castleman, James W. Stites, Ernest Woodward, Squire R. Ogden, Louis Seelbach, and Allen P. Dodd, all of Louisville, Ky., on the brief), for appellants.

Robert S. Marx, of Cincinnati, Ohio (Frank E. Wood, Harry Kasfir, Nichols, Wood, Marx & Ginter, all of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

We are now confronted with another phase of this case which has heretofore been before the District Court (Anderson v. Abbott, D.C., 32 F.Supp. 328), this court (6 Cir., 127 F.2d 696), and the Supreme Court (321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793). Appellants are shareholders of the Banco Kentucky Company (herein called Banco), a bank-stock-holding company, which owned approximately 95% of the stock of National Bank of Kentucky (herein called the Bank.)

Both the Bank and Banco failed in November, 1930, and a receiver was appointed for each. In February following the Comptroller of the Currency made an assessment (Title 12, Sections 63, 64, U.S.C. A.) on the stockholders of the Bank in the sum of $4,000,000, payable April 1, 1931. In March 1931 the Bank's receiver notified the shareholders of Banco that he had demanded payment of the assessment from Banco's receiver, and also that he intended to proceed against them to the extent that he was unable to collect from Banco. In October 1931 the Bank's receiver sued Banco upon the assessment as holder of substantially all of the Bank's shares of stock and obtained judgment upon which about $90,000 was paid. The Bank's receiver brought this suit against those shareholders of Banco who resided within the territorial jurisdiction of the District Court and sought to recover from each of them their proportionate part of the balance of the assessment. The District Court dismissed the bill and we affirmed the decree, but the Supreme Court held that the shareholders of Banco were liable for the assessment and remanded the cause to the District Court "for proceedings in conformity with the opinion of this" (the Supreme) "court." Anderson v. Abbott, 321 U.S. 349, 64 S.Ct. 531, 88 L.Ed. 793.

The District Court rendered a decree against each of the shareholders of Banco then before it for $2.85 plus upon each share held by them at the closing of the Bank. This amount included interest from the date of the assessment which amounted to approximately 78% upon the principal amount of the respective judgments. Five of these shareholders moved the Supreme Court to be permitted to file a petition for a writ of mandamus against the District Judge to compel him to modify the decree by the disallowance of interest. The motion was denied.

The appeals here are from so much of the decree as adjudged "that plaintiff recover interest upon that part of the principal amount of the Comptroller's assessment for which each defendant is liable." Our question is whether the court erred in the allowance of interest from the date the assessment was due.

At the outset it is urged that the District Court misconstrued the mandate. The point lacks merit. The Supreme Court went no further than to determine that Banco's shareholders were liable upon

374

the assessment. It did not and could not, under the record, fix the liability of the individual shareholders and it decided nothing, either in its opinion or in its mandate, upon the matter of interest. These matters were left for the consideration of the District Court upon the issues made by the pleadings. In In re Sanford Fork & Tool Co., 160 U.S. 247, at page 256, 16 S.Ct. 291, 293, 40 L.Ed. 414, the court said, "But the circuit court may consider and decide any matters left open by the mandate of this court; * * *."

■ Appellants say that interest was not specifically prayed for in the bill of complaint. Although the ·prayer of the bill failed to mention the subject of interest, appellants were notified in paragraph XXV thereof that interest was claimed at the rate of 6% per annum and this was followed by a prayer for general relief. In Lockhart v. Leeds, 195 U.S. 427, 436, 25 S.Ct. 76, 79, 49 L.Ed. 263, the court said:

"There is nothing in the intricacy of equity pleading that prevents the plaintiff from obtaining the relief under the general prayer, to which he may be entitled upon the facts plainly stated in the bill."

■ Laying other matters, hereinafter considered, to one side, it is obvious that under the opinion of the Supreme Court, appellants as shareholders in Banco would, in a suit against them by the Bank's receiver, be liable to judgment upon the Comptroller's assessment. The court said, at page 355 of 321 U.S., 64 S.Ct. 534, 88 L.Ed. 793, supra: "Either the record owner or the actual owner of shares of a national bank may be liable on the statutory assessment. Richmond v. Irons, 121 U.S. 27, 58, 7 S.Ct. 788, 802, 30 L.Ed. 864; Keyser v. Hitz, 133 U.S. 138, 149, 10 S.Ct. 290, 294, 33 L.Ed. 531; Pauly v. State Loan & Trust Co., 165 U.S. 606, 17 S.Ct. 465, 41 L.Ed. 844; Lantry v. Wallace, 182 U.S. 536, 21 S.Ct. 878, 45 L.Ed. 1218; Ohio Valley National Bank v. Hulitt, 204 U.S. 162, 27 S.Ct. 179, 51 L.Ed. 423; Early v. Richardson, 280 U.S. 496, 50 S.Ct. 176, 74 L.Ed. 575, 69 A.L.R. 658; Forrest v. Jack, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457. A receiver may sue both—partial satisfaction of the judgment against one being a pro tanto discharge of the other. Ericson v. Slomer, 7 Cir., 94 F.2d 437. And see Continental National Bank & Trust Co. v. O'Neil, 7 Cir., 82 F.2d 650."

See Barbour v. Thomas, 6 Cir., 86 F.2d 510. It follows that in such a suit, any judgment against appellants would have carried interest from the due date of the assessment. See Casey v. Galli, 94 U.S. 673, 677, 24 L.Ed. 168; Bowden v. Johnson, 107 U.S. 251, 2 S.Ct. 246, 27 L.Ed. 386; Garvy v. Wilder, 7 Cir., 121 F.2d 714, 716; see also Richmond v. Irons, 121 U.S. 27, 7 S.Ct. 788, 30 L.Ed. 864.

This suit was not brought at law to recover of appellants and other shareholders of Banco the full amount of the assessment, as might have been done, but the bill seeks a recovery from each shareholder of Banco of his proportionate part of the balance due on the assessment after the amounts received from Banco were properly ·credited. The allegations of the bill emphasize this, for in paragraph IV thereof it is stated: "This suit is brought in equity for the reason that the plaintiff does not have an adequate remedy at law because an accounting is necessary and prayed for herein to determine the proportionate part of the aggregate liability claimed against the defendants named herein for which each individual is severally liable and to determine the credit to which the defendants may be entitled, if any, by reason of the collections made by the plaintiff on account of the statutory liability hereinafter set forth. The matters set forth herein involve complicated interests and degrees of interest among approximately six thousand stockholders of Banco Kentucky Company hereinafter described. * * *"

And the prayer of the bill, which seeks a complete accounting to determine the amount found to be due upon the assessment liability of appellants, accords with its allegations.

Appellants' main contention is, that upon the theory of the bill, the receiver's claims against them were unliquidated and therefore did not bear interest. The point that the claim was unliquidated must be considered.

■ Before the liability of the shareholders of Banco could be made certain, it was necessary to determine, (1) the number of shares of the Bank held by Banco; (2) the percentage · that the certificates of membership of each shareholder of Banco have to the whole; and (3) the amounts collected by the receiver from Banco which were to be credited proportionately upon

each shareholder's liability. No citation of authority is needed to support the proposition that an unliquidated claim does not generally bear interest, but this rule is not without its exceptions.

■ A well-recognized exception is that such a claim will carry interest where the amount due can be determined at the commencement of the action by mere computation. Robertson v. Miller, 2 Cir., 286 F. 503, 510; Demotte v. Whybrow, 2 Cir., 263 F. 366, 368. As pointed out above, there was no difficulty in determining when interest would begin to accrue. Further, the number of shares of the Bank held by Banco, and the proportionate ownership of each Banco shareholder was a matter of calculation, but the amounts collected from Banco which were to be credited proportionately upon the claim of the receiver against the Banco shareholders, could not have been determined at the institution of the suit. It appears that collections from Banco were made from time to time during the long drawn out litigation.

■ However, it does not follow that interest may not be collected. We have ruled more than once that in equity the allowance of interest is in the sound discretion of the court. United Light & Power Co. v. Grand Rapids Trust Co., 6 Cir., 85 F.2d 331, 338; Seaboard Surety Co. v. Spear, 6 Cir., 119 F.2d 849, 852.

Even in equitable actions on legal claims one court has held it proper to leave the allowance of interest to the discretion of the District Court. In re Paramount Publix Corporation, 2 Cir., 85 F.2d 42, 45, 106 A.L.R. 1116. That case and ours have many similarities. In that case although the liability was based upon an anticipatory breach and the claim was not completely liquidated at the time, still the liability was based upon the breach, as here it is based upon the assessment. In that case the liability was progressively liquidated and although the debtor could not at once know the full amount of its liability, the court stated it could have tendered an increasing proportion of the amount. The court went on to say that "complete resti-

tution demands interest from the date of the breach."

■ Here we think complete restitution demands that interest be charged from the date of the assessment and that the court did not abuse its discretion in so holding. The record shows that appellants on or about March 20, 1931, were notified by the receiver of the Bank that he intended "to proceed against you" (them) "for the collection of the * * * assessment liability represented by the said trustee's participation certificates held by said Banco Kentucky Company to the extent that the undersigned, as receiver, * * * is unable to collect said assessment from the Banco Kentucky Company or its receiver." So it cannot be said that appellants did not have ample notice.

■ Just how accurately they might have ascertained how much they were entitled to credit by collections made from Banco from time to time as the litigation proceeded, is not altogether clear. It would seem that they could have arrived at an approximate estimate of these credits by computations made from the receiver's reports, which were either available or could have been made so, and could have used these estimates as a basis for making partial payments to reduce interest charges. But aside from this, from the institution of the suit in 1936 until after the decision of the Supreme Court in 1944, appellants made no effort to reduce liability; quite the reverse. They strenuously contested any liability at all. It ill becomes them now to say that they could not have reduced their liability for interest because they did not know how much to pay, since they never manifested a disposition to pay.

As between a bank stockholder who bought his stock with knowledge of his liability to assessment, and these appellants, who thought their holdings not so liable, the levying of interest may seem harsh; but as between depositors in the Bank who have lost heavily, and these appellants, who have had the benefit of this money since their notification in 1931 of possible liability, we see no equitable reason for denying interest.

The decree is affirmed.